UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN TENNISON,<br><br>   Plaintiff,<br><br>   v.<br><br>CITY & COUNTY OF SAN FRANCISCO, *et al.*,<br><br>   Defendants.<br>_____/ | No. C-04-0574 CW (EMC)<br><br>**ORDER GRANTING PLAINTIFF'S MOTION TO COMPEL CITY TO PRODUCE AUDIOTAPES FOR NONDESTRUCTIVE FORENSIC TESTING; AND DENYING AS MOOT PLAINTIFF'S MOTION TO COMPEL CITY TO PRODUCE DOCUMENTS AND WITNESSES**<br>**(Docket No. 115)** |

Plaintiff John Tennison has filed a motion to compel, seeking (1) the production of audiotapes for testing; (2) the production of certain documents; and (3) the production of certain witnesses. Having considered the parties' briefs and accompanying submissions, the Court hereby GRANTS the motion to compel the audiotapes for testing but DENIES the motion to compel production of documents and witnesses as moot.

**I. DISCUSSION**

A.  Motion to Compel Production of Audiotapes for Testing

This discovery dispute concerns two audiotapes (DA 00831 and DA 00838) labeled "Masina Fauolo 4/23/90" and "M. Fauolo 4/23/90." In responses to interrogatories, the City stated that the tapes are inaudible or blank. Mr. Tennison asked the City to produce the tapes for testing to determine whether the tapes do contain audio data or are in fact blank. The parties could not agree, however, on what kind of testing would be permitted. More specifically, the parties could not agree as to whether Mr. Tennison's expert would be allowed to do magnetic development testing. The

1  City argues that such testing is destructive and so should not be allowed.  Mr. Tennison argues
2  otherwise.
3      Federal Rule of Civil Procedure 34(a) allows a party to serve on the opposing party a request
4  "to inspect and copy, test, or sample any tangible things which constitute or contain matters within
5  the scope of Rule 26(b) and which are in the possession, custody or control of the party upon whom
6  the request is served."  Fed. R. Civ. P. 34(a).  Rule 34(b) provides that "[t]he request shall specify a
7  reasonable . . . manner of making the inspection and performing the related acts."  Fed. R. Civ. P.
8  34(b).  "Production for the purposes of *destructive* testing is included within the scope of [Rule 34]."
9  7-34 Moore's Fed. Prac. -- Civ. § 34.14 (emphasis added); *see also Ostrander v. Butler's*
10 *Promotions, Inc.*, 119 F.R.D. 417, 419 (D. Minn. 1988) (same).
11     A court has discretion in deciding whether or not to allow destructive testing to take place.
12 *See, e.g.*, *Dabney v. Montgomery Ward & Co., Inc.*, 761 F.2d 494, 498 (8th Cir. 1985) (in case
13 involving a request for destructive testing, noting that a court's decision to deny or limit discovery
14 will not be reversed unless there has been a clear abuse of discretion).  In deciding whether to permit
15 destructive testing, the court must balance the interests to be served by the testing -- *e.g.*, is the
16 testing critical to the requesting party's case? -- against countervailing considerations, particularly,
17 the value of the preservation of the evidence to the opposing party.  *See Ostrander*, 119 F.R.D. at
18 419.  "In instances where the *entire* piece of evidence will be consumed by testing, the balance may
19 dictate the denial of a request for such testing."  *Id.* (emphasis added).  On the other hand, the
20 balance may dictate the granting of a request for testing where the party in possession of the evidence
21 has already tested it.  *See id.*
22     As a preliminary matter, the Court must address in the instant case whether the testing
23 proposed by Mr. Tennison is in fact destructive as argued by the City.  If not destructive, then the
24 testing should be permitted.  If destructive, then the Court must balance the interests to be served by
25 the testing against countervailing considerations.
26     The Court finds that Mr. Tennison is not seeking any destructive testing.  At the hearing on
27 the motion, the City represented to the Court that each tape contains approximately 23 minutes of
28 inaudible sound and that the remainder of the tape is blank.  For the inaudible sound, Mr. Tennison's

2

expert will conduct only testing that is -- as conceded by the City -- nondestructive (*e.g.*, critical listening, waveform analysis, spectral analysis, audio enhancement). It is only for those portions of the tape that are blank that the expert will conduct magnetic development testing. Magnetic development testing is to indicate whether the tapes contained data at one time but were subsequently erased. *See* Sanders Reply Decl. ¶ 7. While the City's expert claims that magnetic development testing is destructive because it may cause a loss of signal, *see* Begault Decl. ¶ 9, there will be no loss of signal here because those parts of the tape will already be blank.[1] Given the purpose of magnetic development testing -- to determine whether a blank tape with no audible sound may have been erased -- any loss of high frequency will be inconsequential. In fact, the City admits that even after Mr. Tennison's expert conducts magnetic development testing on the blank section of the tape, the City can conduct a subsequent test. Because the first test on blank tape will not preclude the City's subsequent testing, magnetic development testing is not destructive. To the extent the City is concerned that Mr. Tennison's expert will conduct magnetic development testing on an inaudible section, the City can make a duplicate archive copy of the tape to conduct the alternative tests. Moreover, the City will be permitted to observe the testing by Mr. Tennison's expert.

Accordingly, the Court hereby orders as follows:

1. The City shall have until 12:00 p.m. of May 23, 2005, to produce the audiotapes to Mr. Tennison for testing. This should give the City adequate time to archive the tapes for their own use. The City has conceded that archiving of the tapes will preserve the inaudible sound contained on the tapes.

---

[1] The City's expert also claims that magnetic development testing is destructive because the physical process of testing requires removal and manipulation of the tape. *See* Begault Decl. ¶ 8 ("The tape must be pulled out of the protective plastic shell, lay flat for development, and then rewound by hand, allowing for potential damage to tape due to bending and creasing."). However, the Court does not give much weight to this claim. Mr. Tennison's expert is experienced with this type of testing -- indeed, recently tested 800 tapes in a single case, none of which suffered damage by folding and creasing. *See* Sanders Reply Decl. ¶ 3.

3

2. The testing shall be done by Mr. Tennison's expert, Richard W. Sanders. Mr. Sanders shall test the audiotapes on any day between May 24 and 27, 2005. Mr. Tennison has agreed that the City may choose which day the testing shall take place.

3. For any portion of the audiotapes, Mr. Sanders shall be allowed to do any testing that the parties have agreed is nondestructive (*e.g.*, critical listening, waveform analysis, spectral analysis, and audio enhancement). Mr. Sanders shall only be allowed to do magnetic development testing on those portions of the tape that he, in good faith and in the exercise of his professional judgment, determines to be blank (as opposed to inaudible).

4. Mr. Sanders shall document exactly what testing was done on what portions of the tape. Mr. Sanders (or Mr. Tennison) shall not have any obligation to alert the City prior to doing any magnetic development testing.

5. Mr. Tennison has agreed that the City may send a person (even its own expert) to observe the testing by Mr. Sanders. Mr. Tennison has also agreed that the testing by Mr. Sanders may be videotaped. The parties should meet and confer to make any necessary arrangements if te testing is to be videotaped.

6. Within three days of the testing by Mr. Sanders, the tapes shall be returned to the City. The City may not do any magnetic development testing of its own until after Mr. Sanders has completed his testing and the tapes returned.

B.  <u>Motion to Compel Production of Documents and Witnesses</u>

Mr. Tennison's motion to compel the production of certain documents and certain witnesses is denied, without prejudice, as moot. To the extent that there are related discovery disputes raised in the parties' joint letter of May 13, 2005, *see* Docket No. 141, those disputes are discussed below.

C.  <u>Parties' Joint Letter of May 13, 2005</u>

On May 13, 2005, the parties filed a joint letter, in which Mr. Tennison argued that (1) although the City has produced for deposition some 30(b)(6) witnesses, those witnesses have not been adequately prepared and (2) the City has improperly instructed those witnesses not to answer certain questions. On May 17, 2005, the City filed a motion for protective order concerning its instruction to the 30(b)(6) witnesses not to answer certain questions.

The Court hereby orders the parties to meet and confer in person on both issues. Regarding the second issue, as stated at the hearing on the above motions to compel, the Court finds the reasoning in *Detoy v. City & County of San Francisco*, 196 F.R.D. 362 (N.D. Cal. 2000), persuasive, and the parties are to be guided by that opinion as well as the Court's comments at the hearing.

If, after the meet and confer, any disputes remain, the parties shall file a joint letter by June 8, 2005, explaining what the disputes are. For each dispute, the parties should provide a brief statement of their position, including citation to any relevant legal authority. The joint letter shall be in lieu of any briefing -- both with respect to the joint letter of May 13 *and* the City's motion for protective order. The remaining disputes shall be heard at 10:30 a.m. on June 22, 2005.

## II.   CONCLUSION

For the foregoing reasons, the Court grants the motion to compel production of the audiotapes for testing but denies as moot the motion to compel production of documents and witnesses.

This order disposes of Docket No. 115.

IT IS SO ORDERED.

Dated: May 20, 2005

_____
EDWARD M. CHEN
United States Magistrate Judge