# EXHIBIT 51

```
 1                UNITED STATES DISTRICT COURT

 2              NORTHERN DISTRICT OF CALIFORNIA

 3

 4  JOHN TENNISON,

 5           Plaintiff,
    vs.                              Case No. C 04-00574 CW
 6
    CITY AND COUNTY OF SAN
 7  FRANCISCO; SAN FRANCISCO
    POLICE DEPARTMENT; PRENTICE
 8  EARL SANDERS; NAPOLEON HENDRIX;
    and GEORGE BUTTERWORTH,
 9
             Defendants.
10  _____/

11

12

13      VIDEOTAPED DEPOSITION OF PRENTICE EARL SANDERS

14              Volume I, pages 1 - 229

15              Tuesday, March 22, 2005

16

17

18

19  Reported by:

20  HEIDI BELTON, CSR #12885, RPR          COPY

21  ------------------------------------------------------------

22              JAN BROWN & ASSOCIATES

23            CERTIFIED SHORTHAND REPORTERS

24   476 Jackson Street, San Francisco, California 94111

25                 (415) 981-3498
```

| | | |
|---|---|---|
| 09:57:24 | 1 | arrested in the Peter Lee case. |
| 09:57:27 | 2 | BY MR. BALOGH: |
| 09:57:28 | 3 | Q.   I was just asking during 1989, can you remember |
| 09:57:30 | 4 | any other gang homicides -- |
| 09:57:32 | 5 | A.   Not off the top of my head.  If you have a |
| 09:57:35 | 6 | document, give it to me.  I'll -- I can -- it will |
| 09:57:38 | 7 | probably refresh my memory. |
| 09:57:40 | 8 | Q.   I don't have a document.  I'm asking do you |
| 09:57:42 | 9 | recollect any cases? |
| 09:57:43 | 10 | A.   I don't recall off the top of my head 16 years |
| 09:57:45 | 11 | later or so, no. |
| 09:57:56 | 12 | Q.   Which officers were involved with you and |
| 09:57:57 | 13 | Inspector Hendrix with conducting the Shannon homicide |
| 09:57:59 | 14 | investigation? |
| 09:58:02 | 15 |          MR. QUADRA:  Objection.  Vague. |
| 09:58:10 | 16 |          THE WITNESS:  Actually, the entire Potrero |
| 09:58:13 | 17 | station -- I recall it was Southeast station at that |
| 09:58:16 | 18 | time -- all the officers were involved.  The plain |
| 09:58:21 | 19 | clothes officers, the Gang Task Force.  We were |
| 09:58:25 | 20 | receiving assistance from all of them. |
| 09:58:26 | 21 | BY MR. BALOGH: |
| 09:58:27 | 22 | Q.   Who was leading the investigation? |
| 09:58:33 | 23 | A.   I was. |
| 09:58:34 | 24 | Q.   And were you leading it with Mr. Hendrix acting |
| 09:58:38 | 25 | under your direction, or were you leading it jointly with |

| | | |
|---|---|---|
| 10:16:46 | 1 | THE WITNESS: I think since you made it |
| 10:16:48 | 2 | November 1990, no. I was -- I became aware of his -- |
| 10:16:53 | 3 | became aware of that tape in May of -- in May of '91 at |
| 10:17:05 | 4 | the -- Mr. Grim was -- Mr. Lerue Grim was doing the new |
| 10:17:14 | 5 | trial motion, and I was working with Mr. Butterworth to |
| 10:17:17 | 6 | oppose that. |
| 10:17:19 | 7 | BY MR. BALOGH: |
| 10:17:19 | 8 | Q.   How did you become aware that Mr. Ricard gave a |
| 10:17:23 | 9 | taped confession to Gittens and Lewis in November 1990? |
| 10:17:28 | 10 | A.   It was one -- it was a tape that Mr. Butterworth |
| 10:17:32 | 11 | and I listened to to make my declaration to oppose the |
| 10:17:43 | 12 | pretrial motion. |
| 10:17:46 | 13 | Q.   How did you become aware -- |
| 10:17:47 | 14 | Actually, can you just read my last question |
| 10:17:50 | 15 | back. |
| 10:17:50 | 16 | (Record read.) |
| 10:18:05 | 17 | THE WITNESS: Mr. Butterworth saw me and |
| 10:18:07 | 18 | said -- asked me about the tape. And I had no knowledge |
| 10:18:14 | 19 | of the tape. He then got the tape and called me to his |
| 10:18:21 | 20 | office and -- to help him make out the -- my declaration |
| 10:18:29 | 21 | or at least help him work on the investigation against |
| 10:18:33 | 22 | the new trial motion. |
| 10:18:34 | 23 | BY MR. BALOGH: |
| 10:18:34 | 24 | Q.   You said you heard from Mr. Butterworth. He |
| 10:18:36 | 25 | asked you about the tape? |

| | | |
|---|---|---|
| 10:18:37 | 1 | A.   Yes. |
| 10:18:39 | 2 | Q.   Where did that conversation take place? |
| 10:18:41 | 3 | A.   In his -- in his -- over the phone or in his |
| 10:18:43 | 4 | office.  I don't recall which. |
| 10:18:45 | 5 | Q.   What did he say to you? |
| 10:18:46 | 6 | A.   He asked me did I know about the tape. |
| 10:18:48 | 7 | Q.   What did he say exactly, the best of your |
| 10:18:50 | 8 | recollection? |
| 10:18:51 | 9 | A.   I don't recall exactly what he said, but he was |
| 10:18:53 | 10 | asking about a tape in which I had no knowledge of the |
| 10:18:57 | 11 | tape -- of a tape -- that Gittens and -- I guess it was |
| 10:19:01 | 12 | Gittens and -- and Lewis?  I think those two were the |
| 10:19:07 | 13 | ones.  Because they had never talked to me about it. |
| 10:19:10 | 14 | Q.   How did Mr. Butterworth describe the tape to |
| 10:19:12 | 15 | you? |
| 10:19:12 | 16 | A.   He said it was a taped confession from some guy |
| 10:19:18 | 17 | named -- from LaVista.  And that's what -- from Lovinsky |
| 10:19:22 | 18 | or Vista, whatever the hell his name is.  And I told him I |
| 10:19:26 | 19 | have no knowledge of a tape like that.  And he said -- he |
| 10:19:30 | 20 | called me back later and said he had found -- or had found |
| 10:19:38 | 21 | one and for me to come down and help him follow up on some |
| 10:19:41 | 22 | investigation that was needed. |
| 10:19:42 | 23 | Q.   What was your reaction when you had heard that |
| 10:19:44 | 24 | someone else had confessed to the Shannon homicide? |
| 10:19:52 | 25 | A.   I thought that it was -- it was noncredible from |

| | | |
|---|---|---|
| 10:28:36 | 1 | Q.  Okay.  I'm not asking whether you'd be |
| 10:28:37 | 2 | challenged.  My question is, is it a requirement that the |
| 10:28:43 | 3 | Miranda warning be tape-recorded? |
| 10:28:45 | 4 | MR. QUADRA:  Objection.  Vague and ambiguous. |
| 10:28:46 | 5 | Also as to the term "requirement," if it calls for a |
| 10:28:49 | 6 | legal conclusion, I object on that grounds. |
| 10:28:52 | 7 | You can answer the question to the best of your |
| 10:28:55 | 8 | ability. |
| 10:28:55 | 9 | THE WITNESS:  Counsel, in my practice -- in my |
| 10:28:57 | 10 | training and in my studies of doing police work and in |
| 10:29:04 | 11 | doing police work, if I'm going to arrest you and you're |
| 10:29:07 | 12 | my per- -- you're my suspect -- I think it's "person of |
| 10:29:11 | 13 | interest" now -- before I talk to you or take an |
| 10:29:16 | 14 | official statement, I give you a Miranda warning and put |
| 10:29:19 | 15 | it on tape. |
| 10:29:20 | 16 | BY MR. BALOGH: |
| 10:29:20 | 17 | Q.  Okay.  That's all well and good, but I'm going |
| 10:29:23 | 18 | to keep on asking the same question -- |
| 10:29:24 | 19 | A.  That's my -- |
| 10:29:25 | 20 | Q.  -- until I get an answer. |
| 10:29:26 | 21 | Is it a requirement that the issuance of a |
| 10:29:30 | 22 | Miranda warning be tape-recorded? |
| 10:29:32 | 23 | MR. QUADRA:  Objection to the term |
| 10:29:32 | 24 | "requirement" as vague and ambiguous. |
| 10:29:35 | 25 | THE WITNESS:  In my training I'm trained that |

| | | |
|---|---|---|
| 10:41:01 | 1 | Q. At the time you spoke to Mr. Hendrix, had the |
| 10:41:04 | 2 | new trial motion already been denied? |
| 10:41:16 | 3 | A. I don't recall. |
| 10:41:16 | 4 | MR. BALOGH: I'm getting a note from the |
| 10:41:17 | 5 | videographer to take a small break, which makes a lot of |
| 10:41:21 | 6 | sense. So unless anyone objects, we'll take a small |
| 10:41:25 | 7 | break now. |
| 10:41:27 | 8 | THE VIDEOGRAPHER: Thank you. Off the record |
| 10:41:33 | 9 | at 10:41 a.m. |
| 10:42:58 | 10 | (Recess taken from 10:41 a.m. to 10:45 a.m.) |
| 10:53:12 | 11 | THE VIDEOGRAPHER: We're back on the record. |
| 10:53:13 | 12 | The time is 10:53 a.m. |
| 10:53:20 | 13 | BY MR. BALOGH: |
| 10:53:21 | 14 | Q. Let's go back to the time you're sitting with |
| 10:53:23 | 15 | Mr. Butterworth and you've listened to the confession. Is |
| 10:53:25 | 16 | that -- can you orient yourself to that moment in time? |
| 10:53:28 | 17 | A. Yes. |
| 10:53:29 | 18 | Q. Do you remember when that was in relation to the |
| 10:53:30 | 19 | new trial motion? |
| 10:53:36 | 20 | A. We were preparing to oppose the new trial |
| 10:53:43 | 21 | motion. I recall my declaration. We were drafting it. |
| 10:53:54 | 22 | So I don't know -- I don't know whether the new trial |
| 10:53:58 | 23 | motion -- had not, of course, at that time been denied, |
| 10:54:01 | 24 | but it was -- we were preparing to oppose -- oppose it. |
| 10:54:06 | 25 | Q. Had there been a hearing yet on the new trial |

| | | |
|---|---|---|
| 10:54:09 | 1 | motion? |
| 10:54:11 | 2 | A.  I don't think so. |
| 10:54:12 | 3 | Q.  Because Mr. -- withdrawn. |
| 10:54:14 | 4 | You were the investigating officer present at |
| 10:54:16 | 5 | the hearing of the new trial motion; is that correct? |
| 10:54:22 | 6 | A.  I don't recall. |
| 10:54:22 | 7 | Q.  Were you in court with Mr. Butterworth during |
| 10:54:24 | 8 | the hearing of the new trial motion? |
| 10:54:28 | 9 | A.  I don't recall. |
| 10:54:30 | 10 | Q.  Did you testify at the hearing of the new trial |
| 10:54:32 | 11 | motion? |
| 10:54:35 | 12 | A.  I don't think so.  I said a declaration. |
| 10:54:40 | 13 | Q.  What did Mr. Butterworth tell you about how he |
| 10:54:43 | 14 | received a copy of the Ricard confession? |
| 10:54:47 | 15 | A.  I don't think he did. |
| 10:54:48 | 16 | Q.  Did you ask him? |
| 10:54:49 | 17 | A.  No. |
| 10:54:51 | 18 | Q.  When you had found -- withdrawn. |
| 10:54:54 | 19 | When you heard the confession, you were aware |
| 10:54:56 | 20 | that it was taken in November 1990; is that correct? |
| 10:55:00 | 21 | A.  When I heard it, yes. |
| 10:55:01 | 22 | Q.  And that's seven months prior to May '91 when |
| 10:55:04 | 23 | you're claiming now that that's when you heard it? |
| 10:55:05 | 24 | A.  I heard it in May '91, and it was dated 11 of |
| 10:55:11 | 25 | '90, I believe. |

| | | |
|---|---|---|
| 1(9:54 | 1 | Q. And you ultimately provided a declaration to the court as an expert witness on that matter, correct? |
| 10:59:57 | 2 | |
| 10:59:59 | 3 | A. No. I didn't -- I don't think I went as an expert witness on that. |
| 11:00:02 | 4 | |
| 11:00:03 | 5 | Q. You provided -- |
| 11:00:04 | 6 | A. That was my regular work. |
| 11:00:05 | 7 | Q. You provided a declaration stating your evaluation of the Ricard confession; is that correct? |
| 11:00:07 | 8 | |
| 11:00:14 | 9 | A. Yes, based on my experience. |
| 11:00:15 | 10 | Q. And you put in the declaration giving the court reasons why the court should reject the Ricard confession, correct? |
| 11:00:18 | 11 | |
| 11:00:22 | 12 | |
| 11:00:23 | 13 | A. As I recall, yes. |
| 11:00:23 | 14 | Q. And you included the piece about your investigation at Big 5 to convince the court of why the court should reject the Ricard confession, right? |
| 11:00:25 | 15 | |
| 11:00:27 | 16 | |
| 11:00:32 | 17 | MR. QUADRA: Objection. Lacks foundation. The document speaks for itself. |
| 11:00:33 | 18 | |
| 11:00:39 | 19 | THE WITNESS: As I recall my declaration -- the declaration does speak for itself, but as I recall it -- and as I recall it, there was some items in there that I had talked to a lot of -- I went to Big 5. I informed the court that I had talked to lots of -- taken lots of confessions in my career, and that this one was flawed. And knowing the city, particularly that part of |
| 11:00:41 | 20 | |
| 11:00:45 | 21 | |
| 11:00:48 | 22 | |
| 11:00:53 | 23 | |
| 1(00:56 | 24 | |
| 11:01:04 | 25 | |

| | | |
|---|---|---|
| 11:01:07 | 1 | the city where the shooting took place -- I knew it very |
| 11:01:12 | 2 | well -- it didn't make -- it didn't make sense the way |
| 11:01:21 | 3 | he had, you know, described it. And those are the |
| 11:01:25 | 4 | couple of items that I can recall. |
| 11:01:26 | 5 | BY MR. BALOGH: |
| 11:01:26 | 6 | Q. I just want to take this piece by piece, though. |
| 11:01:29 | 7 | Can you bear with me? |
| 11:01:30 | 8 | A. I will. |
| 11:01:31 | 9 | Q. In your view, you went to Big 5 to either verify |
| 11:01:35 | 10 | or disprove something Mr. Ricard said; is that right? |
| 11:01:37 | 11 | A. Yes. |
| 11:01:38 | 12 | Q. And based on your investigation of going to Big |
| 11:01:42 | 13 | 5 you found facts to disprove part of what Mr. Ricard |
| 11:01:45 | 14 | said; is that correct? |
| 11:01:46 | 15 | A. Yes. |
| 11:01:46 | 16 | MR. QUADRA: Objection to the term |
| 11:01:47 | 17 | "investigation." |
| 11:01:48 | 18 | But you can answer the question. |
| 11:01:50 | 19 | BY MR. BALOGH: |
| 11:01:50 | 20 | Q. Yes? |
| 11:01:51 | 21 | A. Relative to the shotgun shell purchase, yes. |
| 11:01:54 | 22 | Q. And you submitted a declaration to explain to |
| 11:01:58 | 23 | the court the reasons why you believed the confession |
| 11:02:01 | 24 | should be rejected, correct? |
| 11:02:02 | 25 | A. Yes. |

| | | |
|---|---|---|
| 11:02:02 | 1 | Q. And one of the reasons you believed the |
| 11:02:04 | 2 | confession should be rejected was your investigation at |
| 11:02:07 | 3 | Big 5, correct? |
| 11:02:09 | 4 | A. Not totally just the investigation at Big 5. I |
| 11:02:11 | 5 | had -- |
| 11:02:12 | 6 | Q. One of the reasons. |
| 11:02:14 | 7 | A. One of the reasons. |
| 11:02:15 | 8 | Q. -- was -- |
| 11:02:16 | 9 | So I'm going to get the question and restate it |
| 11:02:18 | 10 | so it's clear. |
| 11:02:19 | 11 | One of the reasons you believed Mr. Ricard's |
| 11:02:21 | 12 | confession should be rejected was based on your |
| 11:02:25 | 13 | investigation at Big 5, correct? |
| 11:02:26 | 14 | A. One of them, yes. |
| 11:02:27 | 15 | Q. And you informed the court of that basis to help |
| 11:02:31 | 16 | convince the court to reject the Ricard confession; is |
| 11:02:33 | 17 | that right? |
| 11:02:34 | 18 | MR. QUADRA: Lacks foundation. Calls for |
| 11:02:35 | 19 | speculation. Document speaks for itself. |
| 11:02:37 | 20 | BY MR. BALOGH: |
| 11:02:41 | 21 | Q. You may answer. |
| 11:02:41 | 22 | MR. QUADRA: If you recall. |
| 11:02:43 | 23 | THE WITNESS: As I understand your question, |
| 11:02:45 | 24 | that was part of the flaw in his confession. |
| 11:02:54 | 25 | BY MR. BALOGH: |

| | | |
|---|---|---|
| 11:02:54 | 1 | Q. And that -- |
| 11:02:56 | 2 | A. That was part of the evidence of the flaw in his |
| 11:02:59 | 3 | confession. |
| 11:03:01 | 4 | Q. And it was important to alert the court to that |
| 11:03:03 | 5 | flaw, correct? |
| 11:03:03 | 6 | A. Yes. |
| 11:03:04 | 7 | MR. QUADRA: Objection. Argumentative. |
| 11:03:05 | 8 | BY MR. BALOGH: |
| 11:03:05 | 9 | Q. Correct? |
| 11:03:08 | 10 | A. Yes. |
| 11:03:17 | 11 | Q. You spoke about you verified -- withdrawn. |
| 11:03:19 | 12 | You compared the route that Mr. Ricard discussed |
| 11:03:24 | 13 | in his confession with the route that eyewitnesses had |
| 11:03:27 | 14 | given to the police; is that correct? |
| 11:03:31 | 15 | A. Yes. |
| 11:03:32 | 16 | Q. And you -- when you made that evaluation, you |
| 11:03:35 | 17 | checked the statements of the neighborhood witnesses who |
| 11:03:39 | 18 | had given statements to the police department regarding |
| 11:03:41 | 19 | what they witnessed on the night of the homicide; is that |
| 11:03:44 | 20 | right? |
| 11:03:44 | 21 | A. Yes. |
| 11:03:44 | 22 | Q. And there was neighborhood witnesses, there |
| 11:03:46 | 23 | was -- one was -- do you remember the name Jeanette |
| 11:03:49 | 24 | Santos? |
| 11:03:50 | 25 | A. I don't remember the name. But if you have -- |

| | | |
|---|---|---|
| 1 )6:00 | 1 | MR. BALOGH: . I'll just -- had -- when you |
| 11:06:02 | 2 | reviewed the statements of independent witnesses, if |
| 11:06:05 | 3 | those statements corroborated Mr. Ricard's description |
| 11:06:08 | 4 | of the chase, you would have felt that was important to |
| 11:06:10 | 5 | tell the court that, correct. |
| 11:06:12 | 6 | MR. QUADRA: Objection. Argumentative. |
| 11:06:17 | 7 | THE WITNESS: If it had been a significant |
| 11:06:20 | 8 | difference, of course I would have told the court. |
| 11:06:22 | 9 | BY MR. BALOGH: |
| 11:06:22 | 10 | Q. And if there was similarities, would you have |
| 11:06:26 | 11 | told the court? |
| 11:06:27 | 12 | MR. QUADRA: Objection. Lacks foundation. |
| 11:06:28 | 13 | Assumes facts not in evidence; namely, that you decided |
| 11:06:30 | 14 | what was told to the court. But go ahead. |
| 11:06:38 | 15 | THE WITNESS: I reviewed the statements of the |
| 11:06:43 | 16 | witnesses. I reviewed the confession. I counted on |
| 11:06:50 | 17 | what I had done, my own experience in the investigation |
| 11:06:58 | 18 | both written, not written. I also drew upon -- drew |
| 11:07:06 | 19 | upon the location of 7-Eleven and the location of the |
| 11:07:15 | 20 | actual shooting. Mr. Ricard's confession to me didn't |
| 11:07:23 | 21 | make sense. |
| 11:07:24 | 22 | BY MR. BALOGH: |
| 11:07:33 | 23 | Q. My question is, though, when you compared it to |
| 1 )7:37 | 24 | the eyewitness statements of describing the car chase, did |
| 11:07:41 | 25 | any of the neighborhood witnesses confirm the route |

| | | |
|---|---|---|
| 11:10:15 | 1 | A.   As I recall now, I believe I had another contact |
| 11:10:19 | 2 | with her.  But it wasn't so much about the case, though -- |
| 11:10:24 | 3 | this case that we're talking about.  It was about her |
| 11:10:26 | 4 | personal business at the time with her boyfriend. |
| 11:10:30 | 5 | Q.   Okay.  So about this case, you only had one |
| 11:10:32 | 6 | contact with her over the telephone call; is that your |
| 11:10:36 | 7 | testimony? |
| 11:10:36 | 8 | A.   No.  I had one contact with her in person. |
| 11:10:40 | 9 | Q.   It was about this case? |
| 11:10:40 | 10 | A.   No, it wasn't about this case.  She had called a |
| 11:10:43 | 11 | second time. |
| 11:10:43 | 12 | Q.   Okay. |
| 11:10:45 | 13 | A.   And we ended up meeting her in, I think, Daly |
| 11:10:50 | 14 | City. |
| 11:10:51 | 15 | Q.   Okay. |
| 11:10:52 | 16 | A.   And at that time she wanted not so much to |
| 11:10:57 | 17 | discuss this case.  She wanted to discuss her boyfriend |
| 11:11:00 | 18 | who was abusing her. |
| 11:11:01 | 19 | Q.   Did you talk about -- did you talk about the |
| 11:11:03 | 20 | case, though, when you met her in Daly City? |
| 11:11:08 | 21 | A.   Tried to, but she kept going away from it. |
| 11:11:11 | 22 | Q.   Did -- was there any substantive conversation |
| 11:11:13 | 23 | about the case? |
| 11:11:14 | 24 | A.   No. |
| 11:11:14 | 25 | Q.   And when was that contact in Daly City? |

| | | |
|---|---|---|
| 11:11:18 | 1 | A. I don't recall. But it was after the phone |
| 11:11:20 | 2 | call. Maybe -- I don't know what time. I don't want to |
| 11:11:23 | 3 | pin myself to a time. But it was after the early -- it |
| 11:11:25 | 4 | was the first call where I didn't know her name. And then |
| 11:11:28 | 5 | the second call. And she -- and I -- we responded to Daly |
| 11:11:37 | 6 | City. And at that time she was concerned about her |
| 11:11:37 | 7 | boyfriend who was abusing her. |
| 11:11:39 | 8 | Q. So you didn't know her name the first time she |
| 11:11:40 | 9 | called? |
| 11:11:41 | 10 | A. No. |
| 11:11:41 | 11 | Q. How did she get your number? |
| 11:11:44 | 12 | A. I'm sorry? |
| 11:11:44 | 13 | Q. How did she get your number? |
| 11:11:46 | 14 | A. The San Francisco Police Department homicide |
| 11:11:48 | 15 | detail is in the book. |
| 11:11:50 | 16 | Q. How did she get your name? |
| 11:11:52 | 17 | A. I had talked to her one other time. |
| 11:11:54 | 18 | Q. No, the first phone call when you didn't know |
| 11:11:56 | 19 | her name. |
| 11:11:57 | 20 | A. She just called and wanted to talk. And I |
| 11:12:00 | 21 | answered the phone. It was late at -- it was late in the |
| 11:12:03 | 22 | evening. And I answered the phone. So we started |
| 11:12:05 | 23 | talking. |
| 11:12:06 | 24 | Q. So just happenstance you picked up the phone at |
| 11:12:09 | 25 | homicide detail and, bang, there's a witness calling about |

| | | |
|---|---|---|
| 13:18:48 | 1 | the time you submitted it on behalf of his name? |
| 13:19:02 | 2 | A.  I don't recall.  However, I'm the only one that |
| 13:19:04 | 3 | initialed it. |
| 13:19:06 | 4 | Q.  Would it be -- would it have been your practice |
| 13:19:07 | 5 | in 1989 to have submitted documents bearing the names of |
| 13:19:10 | 6 | other officers without consulting with them first? |
| 13:19:16 | 7 | A.  Depends on the circumstances. |
| 13:19:17 | 8 | Q.  How about in this circumstance? |
| 13:19:20 | 9 | A.  We're both working on the case, and I don't |
| 13:19:22 | 10 | recall whether we discussed it in detail or not.  But it |
| 13:19:26 | 11 | was a routine that -- it was a routine practice that in |
| 13:19:29 | 12 | requesting a reward, we would -- it would be something -- |
| 13:19:33 | 13 | we may have discussed it, I just don't remember. |
| 13:19:37 | 14 | Q.  Was this memorandum -- withdrawn. |
| 13:19:39 | 15 | Did you provide this memorandum to George |
| 13:19:42 | 16 | Butterworth at any point in time? |
| 13:19:43 | 17 | A.  Yes.  A copy of it was in the file. |
| 13:19:45 | 18 | Q.  Was it your file, or was it Mr. Butterworth's |
| 13:19:47 | 19 | file? |
| 13:19:47 | 20 | A.  No, it would have been in my file. |
| 13:19:48 | 21 | Q.  Okay.  My question is, at any point in time did |
| 13:19:51 | 22 | you provide this document to Mr. Butterworth? |
| 13:19:55 | 23 | MR. QUADRA:  Vague and ambiguous. |
| 13:19:55 | 24 | You can answer the question. |
| 13:19:58 | 25 | THE WITNESS:  When he was provided with the |

| | | |
|---|---|---|
| 13:20:00 | 1 | file, this was in the -- this copy was in the file. The |
| 13:20:03 | 2 | one here which is page 2, this would have been the file |
| 13:20:08 | 3 | copy. |
| 13:20:09 | 4 | BY MR. BALOGH: |
| 13:20:09 | 5 | Q. How can you tell that this is the file copy? |
| 13:20:12 | 6 | A. It's noted that it was sent to room 400 on the |
| 13:20:18 | 7 | 4th. This copy that's with all of the initials that's |
| 13:20:21 | 8 | page 1 of this Exhibit, 55, it has -- it went through the |
| 13:20:27 | 9 | ranks from the lieutenant up to the chief. So this is the |
| 13:20:32 | 10 | one that would have been approved and come back to let you |
| 13:20:36 | 11 | know that the case had been approved. |
| 13:20:41 | 12 | Q. So -- I'm unclear. Which one of these pages, if |
| 13:20:44 | 13 | any, were in your file? |
| 13:20:53 | 14 | A. The second one. |
| 13:20:53 | 15 | Q. Okay. And why wasn't the first one in your |
| 13:20:53 | 16 | file? |
| 13:20:53 | 17 | A. Well, all of them eventually came to the file. |
| 13:20:55 | 18 | The first copy that goes to the second page of this |
| 13:21:00 | 19 | document would have been a copy that was put in the file |
| 13:21:04 | 20 | to follow up on this one. When this copy came back |
| 13:21:07 | 21 | approved, it would go in right next to them. That's |
| 13:21:10 | 22 | how -- that's how you ended up with it. They both were |
| 13:21:13 | 23 | in -- all three of them -- all three of these copies were |
| 13:21:16 | 24 | in the file (indicating). |
| 13:21:17 | 25 | Q. And your testimony is that -- and how did |

| | | |
|---|---|---|
| 13:21:20 | 1 | Mr. Butterworth come across these copies? |
| 13:21:22 | 2 | A. Looking in the file. |
| 13:21:23 | 3 | Q. So he had access to the homicide inspectors' |
| 13:21:27 | 4 | file? |
| 13:21:27 | 5 | A. Yes. |
| 13:21:27 | 6 | Q. When did he have access to it? |
| 13:21:30 | 7 | A. Whenever he requested. |
| 13:21:31 | 8 | Q. So unless he requested -- the protocol was he |
| 13:21:35 | 9 | would request to look at your file to see what was in it, |
| 13:21:37 | 10 | and then he could look at that time whenever he wanted to? |
| 13:21:41 | 11 | A. Yes. He could -- or call us and say, "I want to |
| 13:21:44 | 12 | see the Shannon file again. Bring it down." Or, "I'll |
| 13:21:48 | 13 | come up and visit you." |
| 13:21:49 | 14 | Q. So you wouldn't provide him with information |
| 13:21:51 | 15 | that was in the file. It was his responsibility to come |
| 13:21:53 | 16 | to you and look in the file to see what was there; is that |
| 13:21:56 | 17 | right? |
| 13:21:58 | 18 | MR. QUADRA: Objection. Argumentative. |
| 13:21:59 | 19 | Compound. Misstates the evidence. |
| 13:22:01 | 20 | Go ahead. |
| 13:22:02 | 21 | THE WITNESS: You're characterizing it what -- |
| 13:22:04 | 22 | that he would have to come down -- actually, his office |
| 13:22:07 | 23 | was downstairs. We would either take it to him, or he |
| 13:22:12 | 24 | would come up. So I don't know which -- you know, |
| 13:22:14 | 25 | whichever was more -- most convenient. |

JAN BROWN & ASSOCIATES   (415) 981-3498

131

229

1   STATE OF CALIFORNIA      )   ss.

2

3           I hereby certify that the deponent in the
4   forgoing deposition was by me duly sworn to testify to
5   tell the truth, the whole truth and nothing but the truth
6   in the within-entitled cause; that said deposition was
7   taken at the time and place therein stated; that the
8   deposition is a true record of the deponent's testimony as
9   reported to the best of my ability by me, a duly certified
10  shorthand reporter and a disinterested person, and was
11  thereafter transcribed under my direction into typewriting
12  by computer.
13          I further certify that I am not interested in
14  the outcome of the said action, nor connected with, nor
15  related to any of the parties in said action, nor to
16  their respective counsel.
17          IN WITNESS WHEREOF, I have hereunto set my hand
18  this 1st day of April, 2005.

19

20

21                    _____
22                    HEIDI BELTON, CSR #12885, RPR

23

24

25