**United States District Court**

For the Northern District of California

1
2
3
4
5          UNITED STATES DISTRICT COURT
6          NORTHERN DISTRICT OF CALIFORNIA
7

8  JOHN TENNISON,                        No. C-04-0574 CW (EMC)

9          Plaintiff,

10     v.                               **ORDER DENYING DEFENDANTS'**
                                        **MOTION TO COMPEL PLAINTIFFS**
11  CITY & COUNTY OF SAN FRANCISCO, *et*   **TO SUBMIT TO PSYCHOLOGICAL**
    *al.*,                               **EVALUATIONS**
12                                       **(Docket No. 113)**
           Defendants.
13  _____/
14

15          Defendants the City and County of San Francisco and George Butterworth have filed a

16  motion to compel Plaintiffs John Tennison and Antoine Goff to submit to psychological evaluations

17  pursuant to Federal Rule of Civil Procedure 35.  Having considered the parties' briefs and

18  accompanying submissions, as well as the oral argument of counsel, the Court hereby DENIES the

19  motion to compel.

20                    **I.   FACTUAL & PROCEDURAL BACKGROUND**

21          Mr. Tennison was convicted of the murder of Roderick "Cooley" Shannon on October 3,

22  1990.  *See* Tennison Compl. ¶ 2.  After his conviction, Mr. Tennison sought habeas relief in state

23  court and then federal court.  *See id.* ¶ 3.  On August 26, 2003, Judge Wilken vacated Mr. Tennison's

24  conviction because the prosecution had suppressed exculpatory evidence and manufactured perjured

25  testimony.  *See id.* ¶¶ 4, 6.

26          Mr. Goff was also convicted of the murder of Mr. Shannon.  *See* Goff Compl. ¶ 2.  After

27  Judge Wilken granted habeas relief to Mr. Tennison, a state court granted relief to Mr. Goff,

28  basically on the same bases specified by Judge Wilken in her habeas order.  *See id.* ¶ 5.

**United States District Court**

For the Northern District of California

Both Mr. Tennison and Mr. Goff have now filed civil cases against Defendants (as well as two individual police officers) pursuant to § 1983.  More specifically, Plaintiffs assert that their due process rights were violated because of the suppression of exculpatory evidence and the manufactured perjured testimony.  In their respective complaints, Plaintiffs allege that, because of the violation of their constitutional rights (which kept them imprisoned for nearly fourteen years), they "suffered and continue[] to suffer mental and emotional distress, humiliation, embarrassment, anxiety, and pain."  Tennison Compl. ¶ 58; Goff Compl. ¶ 60.  In addition, in response to an interrogatory propounded by Defendants, Mr. Tennison has stated that he

> is entitled to compensation for this unjustified deprivation of liberty [13 1/2 years] and the resulting loss of his ability to live and work, earn wages, and pursue happiness in his day-to-day life.  Further, Mr. Tennison's incarceration caused him emotional distress of the variety that anyone imprisoned in violation of his constitutional rights would have suffered.  Mr. Tennison is not alleging a specific mental or psychiatric injury or disorder or a claim of unusually severe emotional distress beyond that which anyone wrongly imprisoned in violation of his or her constitutional rights would have suffered.

Wiener Decl., Ex. J (Mr. Tennison's interrogatory responses).  In a supplemental response, Mr. Tennison refined his answer as follows:

> Tennison is entitled to compensation for this unjustified deprivation of liberty and the resulting loss of his ability to live and work, earn wages, and pursue happiness in his day-to-day life.  Further, Mr. Tennison's incarceration caused him emotional distress of the variety that anyone imprisoned in violation of his constitutional rights would have suffered.  He is not alleging a specific mental or psychiatric injury or disorder.  Rather, Tennison's significant and dramatic emotional distress is of the type that any reasonable 18 year old would suffer if sent to prison for life under the circumstances of this case.  At deposition, Tennison further explained the types of fears, horrors, restrictions on his liberty, and other hardships he experienced due to his unlawful and improper incarceration.

Purcell Decl., Ex. B (Mr. Tennison's supplemental interrogatory responses).

## II.   **DISCUSSION**

Rule 35(a) provides as follows:

> When the mental or physical condition (including the blood group) of a party or of a person in the custody or under the legal control of a party, is in controversy, the court in which the action is pending may order the party to submit to a physical or mental examination by a suitably licensed or certified examiner or to produce for examination

**United States District Court**

For the Northern District of California

> the person in the party's custody or legal control.  The order may be made only on motion for good cause shown and upon notice to the person to be examined and to all parties and shall specify the time, place, manner, conditions, and scope of the examination and the person or persons by whom it is to be made.

Fed. R. Civ. P. 35(a).  The Supreme Court has said that, "unlike the rules pertaining to the permissible scope of other forms of discovery . . . which require only that the information sought be 'relevant' . . . and that discovery devices not be used in bad faith . . . , Rule 35 contains a 'restriction' that the matter be 'in controversy'. . . and . . . that the movant affirmatively demonstrate 'good cause.'"  *Turner v. Imperial Stores*, 161 F.R.D. 89, 91 (S.D. Cal. 1995) (quoting *Schlagenhauf v. Holder*, 379 U.S. 104, 119 (1964)); *see also* 7-35 Moore's Fed. Prac. -- Civ. § 35.03[1][b] (emphasizing that "a showing of mere relevance to the case is insufficient").  The requirements of "in controversy" and "good cause" are "necessarily related."  *Schlagenhauf*, 379 U.S. at 119.

Although the Ninth Circuit has not specifically addressed when a party puts his mental condition in controversy for purposes of Rule 35(a), "the bulk of the reported case law demonstrates that a claim for emotional distress damages, by itself, is not sufficient."  *Ford v. Contra Costa County*, 179 F.R.D. 579, 579-80 (N.D. Cal. 1998); *see also Turner*, 161 F.R.D. at 92 (stating that "[f]ew courts have held that a claim of emotional distress, alone, is sufficient to put a plaintiff's mental condition 'in controversy'").  "Courts generally require the party seeking to compel the evaluation to establish an additional element," *e.g.*, that

> (1) the plaintiff has pled a cause of action for intentional or negligent infliction of emotional distress; (2) the plaintiff has alleged a specific mental or psychiatric injury; (3) the plaintiff has pled a claim for unusually severe emotional distress; (4) the plaintiff plans to offer expert testimony to support a claim of emotional distress; and/or (5) the plaintiff has conceded that his or her mental condition is 'in controversy' for purposes of [Rule] 35(a).

*Ford*, 179 F.R.D. at 580; *see also Fitzgerald v. Cassil*, 216 F.R.D. 632, 637-38 (N.D. Cal. 2003).

In the instant case, the Court finds that there is no good cause to justify mental examinations of Mr. Tennison and Mr. Goff.  Each Plaintiff represented at the hearing on the motion to compel that he is not seeking any emotional distress-related damages for the period following his release from custody.  Neither claim on-going emotional distress or psychological injury.  Rather, such damages sought are limited to those suffered during the period of his incarceration.  Both Mr.

**United States District Court**

For the Northern District of California

1   Tennison and Mr. Goff were released from custody almost two years ago. Therefore, the Court sees

2   little, if any relevance, to a mental examination of either Plaintiff, which would tend to illuminate his

3   current mental state rather than his mental state of several years past. *Compare Bridges v. Eastman*

4   *Kodak Co.*, 850 F. Supp. 216, 222 (S.D.N.Y. 1994) (noting that "most cases where mental

5   examinations have been allowed have either involved a separate tort claim for emotional distress, . . .

6   or an allegation of *ongoing* severe mental injury") (emphasis added).

7        Furthermore, each Plaintiff represented at the hearing that he would not be presenting any

8   expert medical or psychological evidence of emotional distress even as to that suffered during the

9   incarceration. *See Ford*, 179 F.R.D. at 580 (noting that a plaintiff's mental condition is in

10  controversy and that there is good cause for a mental examination when "the plaintiff plans to offer

11  expert testimony to support a claim of emotional distress"). Indeed, Plaintiffs represented that, while

12  they may call an expert to testify about prison conditions, they will not seek any testimony from the

13  expert about the emotional or psychological effect or impact of those conditions, whether on

14  Plaintiffs specifically or on a "typical" person. Thus, there will be no expert medical evidence

15  submitted by either Plaintiff at trial.

16       Finally, Defendants have not shown that Plaintiffs have "alleged a specific mental or

17  psychiatric injury" or "pled a claim for unusually severe emotional distress" for the period of their

18  incarceration. Defendants have not proffered any evidence that either Plaintiff has asserted in his

19  discovery responses or in deposition testimony any particularized psychological injury while

20  imprisoned. Although Mr. Tennison testified in deposition about his having problems with trusting

21  people and sleeplessness, these problems (described only in response to defense counsel's questions)

22  relate to his condition after being released from prison, not during the period of his incarceration.

23       As for Mr. Tennison's deposition testimony about his fear of being assaulted or raped while

24  in prison, the Court does not find this to be unusually severe emotional distress. Determining

25  whether emotional distress is considered "unusually severe" so as to warrant a mental examination

26  under Rule 35 is measured not in absolute terms as Defendants contend but in relative terms -- *i.e.*,

27  relative to the specific circumstances confronting the person. *See Houghton v. M&F Fishing, Inc.*,

28  198 F.R.D. 666, 669 (S.D. Cal. 2001) (concluding no Rule 35 mental examination warranted where

**United States District Court**

For the Northern District of California

1   plaintiff seeks damages for distress "normally associated with or attendant to" the suffering of the

2   injury); *cf. Owens v. Sprint/United Mgmt. Co.*, 221 F.R.D. 657, 660 (D. Kan. 2004) (stating that, in

3   an employment discrimination case, "a 'garden variety' emotional distress claim, one which amounts

4   to no more than an attempt to recover for the generalized insult, hurt feelings and lingering

5   resentment which anyone could be expected to feel if he or she were the recipient of an adverse

6   employment action attributed to discrimination, does not place the plaintiff's mental condition 'in

7   controversy' for purposes of justifying a mental examination under Rule 35").  When the response

8   (the emotional distress) to the circumstances is so unusual and unexpected such that the fact finder's

9   ability to understand the distress stretches beyond a lay person's understanding or knowledge,

10  specialized knowledge of an expert is warranted.  It is in those circumstances that a Rule 35 mental

11  examination will be necessary.  The Rule 35 factor focusing on whether the plaintiff has pled a claim

12  for unusually severe emotional distress (or claims a specific psychological injury) (*see Ford*, 179

13  F.R.D. at 580) is animated by the need for expert testimony, and the concern for fairness in affording

14  the defendant an adequate opportunity to prepare its defense. *See Womack v. Stevens Transp., Inc.*,

15  205 F.R.D. 445, 446 (E.D. Penn. 2001) ("One of the purposes behind Rule 35 is to 'level the playing

16  field' between the two parties in cases where a party's physical or mental condition has become an

17  issue. 'Granting a request for a psychiatric examination pursuant to Rule 35 is to preserve [] the

18  equal footing of the parties to evaluate the plaintiff's mental state. . . .'").  If a psychological

19  response, even if severe, is "usual" and typical of what one would expect under the circumstances,

20  Defendants' need for expert testimony (in addition to cross-examination and presentation of non-

21  expert evidence) is not compelling.[1]

22      Here, Plaintiffs' fear of being raped or assaulted is the kind of distress that any reasonable

23  person could expect if incarcerated for a lengthy period in a state prison.  Defendants have not

24  demonstrated that Plaintiffs have made a claim of distress other than that "normally associated with

---

25  [1] This is not to say that the court should equate whether a mental examination is warranted under
26  Rule 35 with the standard for admissibility of expert testimony under Federal Rule of Evidence 702.
    For example, there may be circumstances where expert testimony might be helpful and thus admissible
27  under Rule 702, but its probative value might be slight and outweighed by the intrusiveness of a Rule
    35 mental examination. *Cf. Marroni v. Matey*, 82 F.R.D. 371, 372 (E.D. Penn. 1979) (finding no good
28  cause for mental examination when less intrusive means available).

**United States District Court**

For the Northern District of California

1   or attachment to" wrongful imprisonment for over thirteen years. *Houghton*, 198 F.R.D. at 669.

2   Nor, as noted above, have Defendants demonstrated that Plaintiffs are asserting any particularized

3   psychological injury or disorder warranting expert analysis; Plaintiffs will not be presenting any

4   medical expert testimony on their distress.  Given these facts and the representations made by Mr.

5   Tennison and Mr. Goff, there is no good cause for a psychological or mental examination of either

6   Plaintiff.

7                                      **III.     CONCLUSION**

8           For the foregoing reasons, the Court denies Defendants' motion to compel.

9           This order disposes of Docket No. 113.

10

11          IT IS SO ORDERED.

12

13   Dated:  July 5, 2005

14                                                      _____

15                                                      EDWARD M. CHEN
                                                        United States Magistrate Judge
16

17

18

19

20

21

22

23

24

25

26

27

28