UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN TENNISON,<br><br>        Plaintiff,<br><br>    v.<br><br>CITY & COUNTY OF SAN FRANCISCO, et al.,<br><br>        Defendants.<br>_____/ | No. C-04-0574 CW (EMC)<br><br>**ORDER GRANTING PLAINTIFF'S MOTION TO COMPEL DEPOSITION OF INSPECTOR JOSEPH TOOMEY (Docket No. 219)** |

      Plaintiff John Tennison has asked the Court to compel the deposition of Inspector Joseph Toomey. Having considered the parties' briefs and accompanying submissions, as well as the *in camera* testimony of Inspector Toomey ordered by the Court, the Court hereby GRANTS the motion to compel but limits the scope of the deposition as detailed below.

### I.    FACTUAL & PROCEDURAL BACKGROUND

      Mr. Tennison filed a letter brief on June 8, 2005, regarding a discovery dispute with Defendant the City and County of San Francisco. *See* Docket No. 219. In the letter brief, Mr. Tennison asked the Court to compel the City to produce Inspector Joseph Toomey for deposition regarding two interviews he and another inspector had with Lovinsky Ricard, one in September 2003 and the other in February 2005. In a responsive letter brief, the City stated that it would allow Inspector Toomey to be deposed on these two meetings; however, it asked that the Court "strictly limit" the deposition to the two meetings because of "the need to protect highly sensitive information about the ongoing investigation into the [Roderick] Shannon murder from disclosure." Docket No.

225. The City asserted that, under the official information privilege, matters related to the investigation should be protected.

On June 10, 2005, the Court held a hearing regarding the discovery dispute. At the hearing, Mr. Tennison argued that the deposition of Inspector Toomey should not be limited to the two meetings with Mr. Ricard but rather that Inspector Toomey should be compelled to answer questions about the entire course of his and Inspector Holly Pera's investigation of the Shannon murder. Mr. Tennison asserted that this questioning was relevant and necessary because the City intended to defend against the § 1983 lawsuit by arguing that Mr. Tennison was in fact guilty of killing Mr. Shannon. The City, in response, continued to assert that matters related to the investigation are protected by the official information privilege.

At the hearing, the Court instructed the parties to provide supplemental filings and submissions. *See* Docket No. 227. After reviewing the filings and submissions, the Court then ordered the City to produce Inspector Toomey for an *in camera* examination regarding the investigation into the Shannon murder. That hearing was held on July 7, 2005.

## II. DISCUSSION

As a preliminary matter, the Court notes that the parties agree that Inspector Toomey can and will be deposed about the two interviews with Mr. Ricard in September 2003 and February 2005. The only issue for the Court is whether, at the deposition, Mr. Tennison should be allowed to ask Inspector Toomey about other aspects of his and Inspector Pera's investigation into the Shannon murder.

The City claims that Mr. Tennison should not be permitted to ask about the investigation because it is protected by the official information privilege. *See Kelly v. City of San Jose*, 114 F.R.D. 653, 661 (1987) (indicating that the official information privilege should protect, *e.g.*, names of confidential informants in on-going criminal investigations or operational plans for imminent police activities). In *Kelly*, Judge Brazil of this District listed the factors that are commonly considered in determining whether information is protected by the official information privilege.

    (1)    The extent to which disclosure will thwart governmental processes by discouraging citizens from giving the government information.

(2)   The impact upon persons who have given information of having their identities disclosed.

(3)   The degree to which government self-evaluation and consequent program improvement will be chilled by disclosure.

(4)   Whether the information sought is factual data or evaluative summary.

(5)   Whether the party seeking the discovery is an actual or potential defendant in any criminal proceeding either pending or reasonably likely to follow from the incident in question.

(6)   Whether the police investigation has been completed.

(7)   Whether any intradepartmental disciplinary proceedings have arisen or may arise from the investigation.

(8)   Whether the plaintiff's suit is non-frivolous and brought in good faith.

(9)   Whether the information sought is available through other discovery or from other sources.

(10)  The importance of the information sought to the plaintiff's case.

*Id.* at 663.  Notably, Judge Brazil indicated that application of the privilege would be justified if there were a "very real threat to obviously important law enforcement interests[,] . . . for example, if a plaintiff were seeking the names of confidential informants in on-going criminal investigations, or wanted to learn operational plans for imminent police activities."  *Id.* at 661; *see also Youngblood v. Gates*, 112 F.R.D. 342, 346 (C.D. Cal. 1985) ("It is found that the investigation is no longer 'ongoing.'  The reason for recognition of the privilege is therefore largely vitiated.").

In the instant case, there are two issues of particular concern: (1) whether there is in fact an ongoing investigation into the murder of Mr. Shannon (which implicates factors (1), (2), and (6) above) and (2) whether Mr. Tennison may be subject to criminal re-prosecution for the murder (which implicates factor (5) above).

Regarding the claimed ongoing investigation, the Court finds that -- based on the *in camera* declaration of Deputy Chief Morris Tabak and the *in camera* testimony of Inspector Toomey -- there were no investigative activities conducted by Inspector Toomey and/or Inspector Pera in pursuit of

United States District Court
For the Northern District of California

1  an ongoing investigation into the Shannon murder until June 2005 disclosure of which would impair
2  the investigation and any prosecution.
3        As for the issue of whether Mr. Tennison may be re-prosecuted for the murder of Mr.
4  Shannon, ultimately, that is not for this Court to decide.  For purposes of this discovery motion, the
5  Court need only determine whether there is a reasonable possibility that Mr. Tennison could be
6  subject to re-prosecution.
7        Mr. Tennison argues that he cannot be re-prosecuted because of the San Francisco Superior
8  Court's order for declaration of factual innocence, filed on October 27, 2003, which provided in part
9  that "pursuant to California Penal Code section 851.8(d), Tennison is and shall be declared to be
10 FACTUALLY INNOCENT of the murder of Roderick Shannon."  Balogh Decl., Ex. 4 (located at
11 Docket No. 260).  However, as pointed out by the City, subdivision (I) of the statute states that
12 "[a]ny finding that an arrestee is factually innocent pursuant to subdivision (a), (b), (c), (d), or (e)
13 shall not be admissible as evidence in *any* action."  Cal. Pen. Code § 851.8(I) (emphasis added).
14 This subdivision suggests that the purpose of a proceeding pursuant to § 851.8 is a limited one --
15 essentially providing for an administrative remedy (*i.e.*, the sealing and subsequent destruction of
16 criminal records) -- that cannot automatically be imported to other contexts.  It appears that the
17 possibility of Mr. Tennison's being re-prosecuted is not clearly foreclosed in spite of the finding of
18 factual innocence.  Whether in fact it is foreclosed may be for another court to decide; this Court
19 only determines there appears to be a possibility of prosecution for purposes of adjudicating the
20 discovery dispute herein.
21       Taking into account the ten factors identified by Judge Brazil in *Kelly*, in particular, the
22 factors related to the ongoing investigation into the Shannon murder and the possibility of Mr.
23 Tennison being re-prosecuted, the Court concludes that the City has properly invoked the official
24 information privilege with respect to the deposition of Inspector Toomey but that the privilege
25 applies only to the investigation that was conducted from June 2005 and on.  Therefore, at the

4

deposition of Inspector Toomey, Mr. Tennison is entitled to ask Inspector Toomey about his and Inspector Pera's actions before June 2005.[1]

The Court notes, however, that, while Mr. Tennison is permitted to ask Inspector Toomey about his and Inspector Pera's activities before June 2005, he may not be questioned about his thoughts and further and future investigative activities in the Shannon case, because revelation of investigative strategies may impact upon the investigation that ensued in June 2005.  Nor may Inspector Toomey be asked about his communications with legal counsel about the criminal investigation.  The attorney-client privilege protects the substance of conversations that Inspector Toomey had with the District Attorney's office or Attorney General's office before June 2005 regarding the investigation into the Shannon murder for purposes of criminal prosecution.  The fact of such conversations, however, would not be protected.

### III.    CONCLUSION

For the foregoing reasons, the Court grants Mr. Tennison's motion to compel consistent with the limitations described above.

This order disposes of Docket No. 219.

IT IS SO ORDERED.

Dated: July 13, 2005

EDWARD M. CHEN
United States Magistrate Judge

---

[1] While the fact of the ongoing investigation is an important consideration in the instant case, the Court notes that the official information privilege does not automatically apply simply because a law enforcement agency demonstrates that there is an ongoing investigation. Rather, as Judge Brazil noted in *Kelly*, "[c]ourts are required to conduct case-by-case, situation specific analyses of competing interests" prior to determining if the privilege applies. *Kelly*, 114 F.R.D. at 669.  Moreover, an investigation need not be ongoing in order for the privilege to apply. *Cf. National Congress for Puerto Rican Rights ex rel. Perez v. City of New York*, 194 F.R.D. 88, 95 (S.D.N.Y. 2000) (discussing law enforcement privilege, which is similar to official information privilege in some respects, and noting that "[a]n investigation need not be ongoing for the law enforcement privilege to apply as 'the ability of a law enforcement agency to conduct future investigations may be seriously impaired if certain information is revealed'").