UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN TENNISON,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>CITY & COUNTY OF SAN FRANCISCO, *et al.*,<br><br>　　　　Defendants.　　　　　　　　／ | No. C-04-0574 CW (EMC)<br><br>**ORDER DENYING DEFENDANTS' MOTION FOR CIVIL CONTEMPT AGAINST LUTHER T. BLUE (Docket No. 131)** |

　　　Defendants Prentice Earl Sanders and Napoleon Hendrix have filed a motion, asking the Court to hold Luther T. Blue, a nonparty witness, in civil contempt for his failure to respond to questions at a deposition. Mr. Blue appeared for a deposition on April 18, 2005, without legal representation and, upon confirming his name and address, he proceeded to assert his Fifth Amendment right against self-incrimination in response to all questions.

　　　Having considered the parties' briefs and accompanying submissions, as well as the oral argument of counsel,[1] the Court hereby DENIES Defendants' motion for civil contempt.

## I. DISCUSSION

　　　Federal Rule of Civil Procedure 45(e) provides that "[f]ailure by any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued." Fed. R. Civ. P. 45(e). The authority of a magistrate judge, such as the

---

[1] Mr. Blue did not file a formal opposition to the motion for civil contempt but did appear at the hearing. Plaintiffs John Tennison and Antoine Goff filed a "response" to Defendants' motion which the Court shall construe as an amicus brief.

1  undersigned, to hold a person in contempt is limited by 28 U.S.C. § 636(e). In this case, §

2  636(e)(6)(B)(iii) is applicable. Under that provision, if an act by a person

> constitutes a civil contempt, the magistrate judge shall forthwith certify the facts to a district judge and may serve or cause to be served, upon any person whose behavior is brought into question under this paragraph, an order requiring such person to appear before a district judge upon a day certain to show cause why that person should not be adjudged in contempt by reason of the facts so certified. The district judge shall thereupon hear the evidence as to the act or conduct complained of and, if it is such as to warrant punishment, punish such person in the same manner and to the same extent as for a contempt committed before a district judge.

28 U.S.C. § 636(e)(6)(B)(iii).

A.   Factual Findings

Considering the evidence presented by the parties as well as all other evidence of record, the Court hereby makes the following findings of fact. The findings below are made only for the purpose of this motion.

1. On January 3, 1990, during the course of the investigation of the murder of Roderick "Cooley" Shannon, Officers Sanders and Hendrix spoke to Chante Smith, who informed them that Mr. Blue, along with other individuals, was present at the murder scene. *See* Purcell Decl., Ex. 1.

2. On February 9, 1990, Officer Sanders interviewed Mr. Blue. *See* Sanford Decl., Ex. A. Officer Sanders informed Mr. Blue that an eyewitness had placed him at the murder scene and suggested, *inter alia*, that Mr. Blue played a role in the murder of Mr. Shannon. For example, Officer Sanders suggested that Mr. Blue was part of a conspiracy to kill Mr. Shannon or at least aided or abetted in the murder by getting "possed up with a group of other young men" who chased down Mr. Shannon to avenge the murders of two other individuals. *Id.* at 27; *see also id.* at 27-28 ("[A]re you gonna sit as a witness or you gonna join the group on the other side of the table for conspiracy to commit murder[?]"). Mr. Blue maintained that he was not present at the scene.

3. On February 14, 1990, Officer Sanders interviewed Mr. Blue a second time. *See* Sanford Decl., Ex. B. Mr. Blue maintained that he knew nothing about the murder. Before terminating the interview, Officer Sanders read Mr. Blue his *Miranda* rights.

2

<div style="writing-mode: vertical">United States District Court — For the Northern District of California</div>

4. On November 6, 2000, some ten years later, Mr. Blue signed a declaration stating that he had in fact witnessed the Shannon murder and that Plaintiffs were not among the persons present at the scene. *See* Sanford Decl., Ex. C. Based on the Court's review of the record, it appears that the declaration was submitted as part of Mr. Tennison's habeas petition considered by Judge Wilken. *See* Order of 8/26/03, at 62.

5. At present, there is an active and ongoing investigation into the murder of Mr. Shannon.

B. <u>Legal Conclusions</u>

In their motion for civil contempt, Defendants contended that (1) Mr. Blue improperly invoked his right against self-incrimination during his deposition and that (2) even if the privilege were properly invoked, Mr. Blue waived the privilege through his prior interviews with Officer Sanders as well as with the declaration of November 6, 2000. However, at the hearing on the motion, Defendants conceded that the privilege was properly invoked and focused instead on the waiver issue only.

1. As conceded by Defendants, Mr. Blue properly invoked the privilege. There is today an active and ongoing investigation into the murder of Mr. Shannon and there is evidence that Mr. Blue was present at the murder scene. Moreover, as indicated by the facts above, the police believed that Mr. Blue may have played a role in the murder, whether as a co-conspirator or an aider and abettor. (Notably, Officer Sanders read Mr. Blue his *Miranda* rights prior to terminating the second interview.) There is no evidence that the police no longer hold this belief. Consequently, Mr. Blue "reasonably believe[d] [his testimony] could be used in a criminal prosecution or could lead to other evidence that might be so used." *Kastigar v. United States*, 406 U.S. 441, 445 (1972).

2. Mr. Blue did not waive his right against self-incrimination based on the prior interviews with Officer Sanders or the declaration of November 6, 2000. There is no dispute that both the interviews and declaration took place well before – and therefore not as a part of – this civil lawsuit, and it is well settled that "a waiver of the Fifth Amendment privilege is limited to the particular proceeding in which the waiver occurs." *United States v. Licavoli*, 604 F.2d 613, 623 (9th Cir. 1979); *see also United States v. Trejo-Zambrano*, 582 F.2d 460, 464 (9th Cir. 1968) ("A waiver of the Fifth Amendment privilege at one stage of a proceeding is not a waiver of that right for other

3

stages."); *In re Neff*, 206 F.2d 149, 152 (3d Cir. 1953) ("It is settled by the overwhelming weight of authority that a person who has waived his privilege of silence in one trial or proceeding is not estopped to assert it as to the same matter in a subsequent trial or proceeding."); *cf. United States v. Salerno*, 505 U.S. 317, 319-20 (1992) (not questioning witnesses' refusal to testify at trial based on the Fifth Amendment privilege even though they had already testified before a grand jury).

## II.  CONCLUSION

Because Mr. Blue properly invoked his right against self-incrimination and did not waive that privilege, the Court finds no basis for civil contempt. Accordingly, Defendants' motion is DENIED, and the Court shall not certify any facts to Judge Wilken under § 636(e)(6)(B)(iii) that Mr. Blue's refusal to respond to questions at his deposition constituted an act of civil contempt.

This order disposes of Docket No. 131.

IT IS SO ORDERED.

Dated: August 2, 2005

_____
EDWARD M. CHEN
United States Magistrate Judge