KEKER & VAN NEST, LLP
ELLIOT R. PETERS - #158708
ETHAN A. BALOGH - #172224
DANIEL PURCELL - #191424
STEVEN P. RAGLAND - #221076
710 Sansome Street
San Francisco, CA  94111-1704
Telephone:  (415) 391-5400
Facsimile:  (415) 397-7188

Attorneys for Plaintiff
JOHN TENNISON

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN TENNISON,<br><br>                    Plaintiff,<br><br>       v.<br><br>CITY AND COUNTY OF<br>SAN FRANCISCO; SAN FRANCISCO<br>POLICE DEPARTMENT; PRENTICE EARL<br>SANDERS; NAPOLEON HENDRIX; and<br>GEORGE BUTTERWORTH,<br><br>                    Defendants. | Case No. C 04-00574 CW (EMC)<br><br>**EXHIBIT 22 TO DECLARATION OF DANIEL E. PURCELL IN SUPPORT OF JOHN TENNISON'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT AND CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT ON MUNICIPAL LIABILITY**<br><br>Date:            October 28, 2005<br>Time:           10:00 a.m.<br>Courtroom:   2<br>Judge:     The Hon. Claudia Wilken |

EXHIBIT 22 TO JOHN TENNISON'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT AND
CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT ON MUNICIPAL LIABILITY
Case No. C 04-00574 CW

359042.01

```
                    UNITED STATES DISTRICT COURT

                   NORTHERN DISTRICT OF CALIFORNIA



JOHN TENNISON,

          Plaintiff,
vs.                                      Case No. C 04-00574 CW

CITY AND COUNTY OF SAN
FRANCISCO; SAN FRANCISCO
POLICE DEPARTMENT; PRENTICE
EARL SANDERS; NAPOLEON HENDRIX;
and GEORGE BUTTERWORTH,

          Defendants.
_____/




          VIDEOTAPED DEPOSITION OF NAPOLEON HENDRIX

                    Volume I, pages 1 - 238

                   Tuesday, January 18, 2005




Reported by:

HEIDI BELTON, CSR #12885, RPR                     COPY

-----------------------------------------------------------

                    JAN BROWN & ASSOCIATES

                 CERTIFIED SHORTHAND REPORTERS

       476 Jackson Street, San Francisco, California 94111

                       (415) 981-3498
```

1

```
09:36:38   1    witness fund, was that payments would be made in cash?
09:36:43   2            MR. QUADRA:  Objection.  Mischaracterizes his
09:36:45   3    testimony.
09:36:46   4            THE WITNESS:  That --
09:36:46   5            MR. QUADRA:  Go ahead.
09:36:47   6            THE WITNESS:  I didn't say that, sir.
09:36:48   7        Q.  (By Mr. Peters)  What is your understanding
09:36:49   8    about whether payments that were made pursuant to the
09:36:53   9    secret witness fund were made by check, in cash, or
09:36:58  10    using some other method?
09:37:00  11        A.  I know of one that was made in cash.
09:37:04  12        Q.  And do you have any further understanding of
09:37:07  13    how payments under the secret witness fund were made?
09:37:09  14        A.  No.
09:37:11  15        Q.  Did you ever discuss the secret witness fund
09:37:13  16    with any members of the San Francisco DA's office?
09:37:25  17        A.  I don't think so.
09:37:25  18        Q.  Did you ever discuss the secret witness fund
09:37:27  19    with George Butterworth?
09:37:34  20        A.  I did not.
09:37:35  21        Q.  Do you have any understanding as to whether
09:37:37  22    George Butterworth in 1989 and 1990 was aware of the
09:37:42  23    existence of the secret witness fund?
09:37:44  24        A.  I haven't the faintest idea, sir.
09:37:47  25        Q.  But you didn't ever discuss it with him?
```

| | | |
|---|---|---|
| 0 10:29 | 1 | the police department in the disclosure to defense |
| 09:40:35 | 2 | counsel of potentially exculpatory evidence? |
| 09:40:44 | 3 | A. I was taught to turn over all evidence. |
| 09:40:50 | 4 | Everything. |
| 09:40:51 | 5 | Q. To whom do you turn over evidence? |
| 09:40:55 | 6 | A. To whatever DA I'm dealing with. |
| 09:40:57 | 7 | Q. So what you were taught was to turn over all |
| 09:41:01 | 8 | the evidence to the DA? |
| 09:41:03 | 9 | A. That's right. Hold nothing back. |
| 09:41:11 | 10 | Q. In the case where there had been a request for |
| 09:41:15 | 11 | money from the secret witness fund, what, if any, steps |
| 09:41:17 | 12 | did you ever take to inform a district attorney about |
| 09:41:20 | 13 | that? |
| 09:41:24 | 14 | A. I don't know that I did. |
| 09:41:26 | 15 | Q. Did you ever receive training in whether or |
| 09:41:29 | 16 | not a reward offered to a witness, a financial reward |
| 09:41:35 | 17 | offered to a witness, is something that needed to be |
| 09:41:46 | 18 | disclosed either to the DA or to the defense counsel? |
| 09:41:48 | 19 | MR. QUADRA: Objection. Vague. |
| 09:41:49 | 20 | Go ahead. |
| 09:41:50 | 21 | THE WITNESS: Could you repeat that, sir. |
| 09:41:53 | 22 | Q. (By Mr. Peters) Did you ever receive any |
| 09:41:53 | 23 | training during your employment at the San Francisco |
| C 41:56 | 24 | Police Department in whether the offer of payment to a |
| 09:41:59 | 25 | potential witness is something that should be disclosed |

| | | |
|---|---|---|
| 0.56:35 | 1 | department, did you ever receive any instructions on |
| 09:56:39 | 2 | whether or not witnesses to a particular event should be |
| 09:56:41 | 3 | given the opportunity to talk to each other about their |
| 09:56:46 | 4 | respective testimony? |
| 09:56:48 | 5 | Does that make sense, that question? |
| 09:56:50 | 6 | A.  (No response.) |
| 09:56:50 | 7 | Q.  Let me rephrase it because I'm not sure I did |
| 09:56:53 | 8 | a very good job with it.  Okay?  Let me just start over. |
| 09:56:56 | 9 | Did you ever receive any training at the |
| 09:56:59 | 10 | police department in whether witnesses to a particular |
| 09:57:02 | 11 | event should be put together to talk about their |
| 09:57:05 | 12 | respective recollections of what happened? |
| 09:57:09 | 13 | A.  All the training I received, you separate the |
| 09:57:11 | 14 | witnesses. |
| 09:57:12 | 15 | Q.  Did you ever receive any training that |
| 09:57:13 | 16 | encouraged you to put witnesses together to talk to each |
| 09:57:16 | 17 | other about what it was that happened? |
| 09:57:21 | 18 | A.  I've never done that, sir. |
| 09:57:23 | 19 | Q.  Are there any circumstances that you can think |
| 09:57:25 | 20 | of when you would recommend that a homicide inspector |
| 09:57:29 | 21 | put two witnesses to an event together to talk over what |
| 09:57:32 | 22 | each of them was saying happened? |
| 09:57:39 | 23 | A.  I can only testify about what I've done, |
| 0 57:42 | 24 | what's done in my presence. |
| 09:57:44 | 25 | Q.  Okay. |

```
09:57:45   1        A.   I've never done that.
09:57:46   2        Q.   And would you -- do you have an opinion about
09:57:49   3   whether that's an appropriate investigative technique?
09:57:53   4             MR. QUADRA:  Objection to the extent it calls
09:57:54   5   for a legal conclusion.  Expert testimony.
09:57:59   6             You can answer.
09:58:01   7             THE WITNESS:  May I proceed?
09:58:02   8             MR. QUADRA:  Yes.
09:58:03   9             THE WITNESS:  When you say putting two people
09:58:05  10   together, I assume you're talking about putting them in
09:58:07  11   a room together so you can listen to what they talk
09:58:09  12   about.
09:58:10  13        Q.   (By Mr. Peters)  Or on the phone together, for
09:58:12  14   example.  Just giving them the opportunity to talk over
09:58:14  15   with each other their respective testimony.
09:58:21  16        A.   I don't recall ever doing that.
09:58:22  17        Q.   And do you have an opinion about whether or
09:58:24  18   not that would be an appropriate investigative
09:58:26  19   technique?
09:58:27  20             MR. QUADRA:  Same objection.
09:58:34  21             THE WITNESS:  Putting them together to talk in
09:58:36  22   a room, no, I never do that.
09:58:40  23        Q.   (By Mr. Peters)  How about putting them on the
09:58:42  24   phone together, "Hey, here.  Why don't you guys talk
09:58:45  25   over on the phone what each of you recalls, and I'll
```

38

```
09:58:48   1   just step out in the hall.  And you let me know when
09:58:51   2   you're done"?
09:58:52   3        A.   No.
09:58:52   4        Q.   How about doing that?
09:58:53   5        A.   No, no.
09:58:55   6        Q.   You would not do that, correct?
09:58:56   7        A.   I would not do that.
09:58:57   8        Q.   And you would not do that because you would
09:58:58   9   not consider that to be an appropriate thing to do,
09:59:00  10   right?
09:59:02  11        A.   To talk over testimony?  No.
09:59:04  12        Q.   And the reason that you wouldn't think that
09:59:05  13   was an appropriate thing to do is that the people might
09:59:10  14   influence each other's testimony, get their stories
09:59:14  15   straight, something along those lines, correct?
09:59:17  16        A.   If the two people were at the scene of a crime
09:59:20  17   together, then there's nothing to go over.  They know
09:59:23  18   what each person saw.
09:59:24  19        Q.   Right.
09:59:25  20        A.   So they would be interviewed separately.  So
09:59:31  21   there's no reason to try to corroborate something
09:59:33  22   because you've already given statements, if that's what
09:59:36  23   you're referring to.
09:59:43  24        Q.   If I've already asked this question, I
09:59:45  25   apologize.  I don't think I have, but I want to make
```

39

```
1   STATE OF CALIFORNIA     )   ss.
2
3           I hereby certify that the deponent in the
4   foregoing deposition was by me duly sworn to testify to
5   tell the truth, the whole truth and nothing but the
6   truth in the within-entitled cause; that said deposition
7   was taken at the time and place therein stated; that the
8   deposition is a true record of the deponent's testimony
9   as reported to the best of my ability by me, a duly
10  certified shorthand reporter and a disinterested person,
11  and was thereafter transcribed under my direction into
12  typewriting by computer.
13          I further certify that I am not interested in
14  the outcome of the said action, nor connected with, nor
15  related to any of the parties in said action, nor to
16  their respective counsel.
17          IN WITNESS WHEREOF, I have hereunto set my
18  hand this 27th day of January, 2005.
19
20
21                  [signature]
22                  HEIDI BELTON, CSR #12885, RPR
23
24
25
```