KEKER & VAN NEST, LLP
ELLIOT R. PETERS - #158708
ETHAN A. BALOGH - #172224
DANIEL PURCELL - #191424
STEVEN P. RAGLAND - #221076
710 Sansome Street
San Francisco, CA  94111-1704
Telephone:  (415) 391-5400
Facsimile:  (415) 397-7188

Attorneys for Plaintiff
JOHN TENNISON

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN TENNISON,<br><br>                                        Plaintiff,<br><br>          v.<br><br>CITY AND COUNTY OF<br>SAN FRANCISCO; SAN FRANCISCO<br>POLICE DEPARTMENT; PRENTICE EARL<br>SANDERS; NAPOLEON HENDRIX; and<br>GEORGE BUTTERWORTH,<br><br>                                        Defendants. | Case No. C 04-00574 CW (EMC)<br><br>**EXHIBIT 30 TO DECLARATION OF DANIEL E. PURCELL IN SUPPORT OF JOHN TENNISON'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT AND CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT ON MUNICIPAL LIABILITY**<br><br>Date:              October 28, 2005<br>Time:              10:00 a.m.<br>Courtroom:     2<br>Judge:           The Hon. Claudia Wilken |

359042.01

KEKER & VAN NEST, LLP
ELLIOT R. PETERS - #158708
ETHAN A. BALOGH - #172224
DANIEL PURCELL - #191424
STEVEN P. RAGLAND - #221076
710 Sansome Street
San Francisco, CA  94111-1704
Telephone:  (415) 391-5400
Facsimile:  (415) 397-7188

Attorneys for Plaintiff
JOHN TENNISON

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN TENNISON,<br><br>                              Plaintiff,<br><br>      v.<br><br>CITY AND COUNTY OF<br>SAN FRANCISCO; SAN FRANCISCO<br>POLICE DEPARTMENT; PRENTICE EARL<br>SANDERS; NAPOLEON HENDRIX; and<br>GEORGE BUTTERWORTH,<br><br>                              Defendants. | Case No. C 04-00574 CW<br><br>**PLAINTIFF JOHN TENNISON'S<br>RESPONSES TO DEFENDANT CITY<br>AND COUNTY OF SAN FRANCISCO'S<br>FIRST SET OF INTERROGATORIES** |

**PROPOUNDING PARTY:**          **DEFENDANT CITY AND COUNTY OF
                                                    SAN FRANCISCO**

**RESPONDING PARTY:**          **PLAINTIFF JOHN TENNISON**

**SET NUMBER:**          **ONE**

351965.02

1    Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, Plaintiff John

2 Tennison hereby responds to Defendant City and County of San Francisco's First Set of

3 Interrogatories as follows:

### GENERAL RESPONSES AND OBJECTIONS

5    1.    Tennison objects to the Interrogatories to the extent that they seek information

6 beyond the scope of Rules 26 and 33 of the Federal Rules of Civil Procedure and/or seek to

7 impose upon Tennison a duty different from or in excess of that provided by the Federal Rules of

8 Civil Procedure or applicable Local Rules.

9    2.    Tennison objects to the Interrogatories on the ground that they are, individually

10 and collectively, overly broad, unduly burdensome or oppressive, and/or unreasonably

11 cumulative and duplicative.

12    3.    Tennison objects to the Interrogatories to the extent that they seek information

13 that is neither relevant to this litigation nor reasonably calculated to lead to the discovery of

14 admissible evidence.

15    4.    Tennison objects to the Interrogatories to the extent that they call for information

16 protected from disclosure by the attorney-client privilege or any other applicable privileges or

17 protections.  Any inadvertent disclosure of such information shall not be deemed a waiver of any

18 such protection or privilege.

19    5.    Tennison objects to the Interrogatories to the extent that they call for information

20 that constitutes attorney work product, was prepared in anticipation of or in connection with

21 litigation, discloses the mental impressions, conclusions, opinions or legal theories of any

22 attorneys for Tennison or for persons having a common interest with Tennison, or is otherwise

23 protected from disclosure under applicable privileges, laws or rules.  Any inadvertent disclosure

24 of such information shall not be deemed a waiver of any such protection or privilege.

25    6.    Tennison objects to the Interrogatories to the extent they seek information equally

26 available to the City and County of San Francisco.

27    7.    Tennison objects to the Interrogatories to the extent they seek information that is

28 readily obtainable from other sources which are less burdensome and/or less expensive.

1

351965.02

1    8.    Tennison objects to the Interrogatories to the extent they seek information not in

2    the possession, custody, or control of Tennison.

3    9.    Tennison objects to the Interrogatories to the extent they call for Tennison to form

4    a legal conclusion before offering any responses.

5    10.    Tennison submits Responses without conceding the relevancy, materiality, or

6    admissibility of the subject matter or any information provided.

7    11.    The fact that Tennison has responded in whole or in part to any particular

8    Interrogatory shall not be interpreted as implying that Tennison acknowledges the propriety of

9    any such Interrogatory.  Further, Tennison's Response to any Interrogatory shall not be

10    construed as an admission of the relevance or admissibility of any such information provided, or

11    as a waiver or abridgement of any applicable privilege or of any applicable objection set forth

12    below.  Tennison reserves the right to supplement, amend, or correct all or part of any Responses

13    provided herein, and to object to the admissibility in evidence of any part of the Responses to the

14    Interrogatories or any information contained therein.

15    12.    Tennison's investigation and discovery of all the facts and circumstances relating

16    to this action have not been completed and are ongoing.  It is therefore possible that additional

17    information may hereafter be discovered that is responsive to the City and County of San

18    Francisco's Interrogatories.  Tennison's Responses are based on information currently available

19    to him.  Tennison reserves the right to complete his investigation and discovery of the facts and

20    his preparation for trial, and to adduce evidence at trial that would have been included in these

21    Responses had its existence been known to Tennison at this time.

22    13.    Tennison objects to the Interrogatories seek information Tennison or another

23    party has already provided in Discovery.

24    **RESPONSES AND OBJECTIONS**

25    **INTERROGATORY NO. 1**

26    Please state all facts supporting your allegation in paragraph 44 of your complaint that

27    "SFPD delegated final policymaking authority to Hendrix and Sanders with respect to the

28    investigation and arrest of gang-related suspects."

2

351965.02

1  **RESPONSE TO INTERROGATORY NO. 1**

2          Tennison objects to this Interrogatory on the ground that it calls for information protected

3  from disclosure by the attorney-client privilege or any other applicable privileges or protections.

4  Any inadvertent disclosure of such information shall not be deemed a waiver of any such

5  protection or privilege.  Tennison further objects to this Interrogatory on the ground that it calls

6  for information that constitutes attorney work product, was prepared in anticipation of or in

7  connection with litigation, discloses the mental impressions, conclusions, opinions or legal

8  theories of any attorneys for Tennison or for persons having a common interest with Tennison, or

9  is otherwise protected from disclosure under applicable privileges, laws or rules.  Any

10  inadvertent disclosure of such information shall not be deemed a waiver of any such protection

11  or privilege.  Tennison also objects to this Interrogatory on the ground that it calls for Tennison

12  to form a legal conclusion before offering any responses.  Tennison further objects to this

13  Interrogatory to the extent that it seeks information equally available to the City.

14          Tennison also objects to this Interrogatory as premature because the City has not

15  completed production of materials responsive to Tennison's February 1, 2005 Second Set of

16  Requests for Production of Documents and Things, and/or other discovery requests pertinent to

17  this inquiry, such as Tennison's February 1, 2005 Notice of Deposition under Fed. R. Civ.

18  P. 30(b)(6).  In fact, the City has intentionally delayed providing discovery for these past four

19  months to deprive from Tennison further evidence of its liability in this case.  The City's demand

20  for discovery under these circumstances in troubling.

21          Subject to and without waiving these objections, Tennison responds that at this time he

22  understands and believes the following:  In the 1980's, the San Francisco Police Department

23  assigned Napoleon Hendrix and Earl Sanders to focus on alleged gang-related murders.  In that

24  capacity, Hendrix and Sanders worked with the Gang Task Force, a group of police officers

25  charged with stopping gang activity generally, and that Hendrix and Sanders were given

26  authority over the Gang Task Force with respect to any alleged gang-related homicide, and

27  frequently used GTF officers to collect information and evidence as part of their homicide

28  investigations.  Solving possibly gang-related murders was such a high priority for the SFPD,

PLAINTIFF JOHN TENNISON'S RESPONSES TO DEFENDANT CITY AND COUNTY OF SAN
FRANCISCO'S FIRST SET OF INTERROGATORIES
CASE NO. C 04-00574 CW

351965.02

1  and Hendrix and Sanders personally, that the two inspectors met with the Gang Task Force every

2  day at noon for years during the late 1980s and 1990s to discuss alleged gang-related killings.

3  No authority within the SFPD supervised Hendrix's and Sanders' decision making with regard to

4  the investigation and arrest of alleged gang-related suspects. Instead, that authority was

5  delegated to Hendrix and Sanders.

6  **INTERROGATORY NO. 2**

7      Please identify (i.e., provide name and all known addresses and phone numbers) all

8  persons with knowledge of the facts stated in your response to interrogatory 1.

9  **RESPONSE TO INTERROGATORY NO. 2**

10      Tennison objects to this Interrogatory to the extent that it seeks information equally

11  available to City. Discovery regarding municipal liability is ongoing and Tennison reserves the

12  right to complete his investigation and discovery of the facts and his preparation for trial, to

13  supplement this Response, and to adduce evidence at trial that would have been included in this

14  Response had its existence been known to Tennison at this time. Tennison also objects to this

15  Interrogatory as premature because the City has not completed production of materials

16  responsive to Tennison's February 1, 2005 Second Set of Requests for Production of Documents

17  and Things, and/or other discovery requests pertinent to this inquiry, such as Tennison's

18  February 1, 2005 notice of deposition under Fed. R. Civ. P. 30(b)(6). In fact, the City has

19  intentionally delayed providing discovery for these past four months to deprive from Tennison

20  further evidence of its liability in this case. The City's demand for discovery under these

21  circumstances in troubling.

22      Subject to and without waiving the specific and general objections above, Tennison

23  understands that people with knowledge of these facts include:

24      Napoleon Hendrix

25      Prentice Earl Sanders

26      Gerald McCarthy

27      Michael Lewis

28      Neville Gittens

351965.02

1      Leroy Lindo

2      Frank Jordan

3  **INTERROGATORY NO. 3**

4      Please identify all documents supporting or otherwise relating to your response to

5  interrogatory 1.

6  **RESPONSE TO INTERROGATORY NO. 3**

7      Tennison objects to this Interrogatory on the ground that it calls for information protected

8  from disclosure by the attorney-client privilege or any other applicable privileges or protections.

9  Any inadvertent disclosure of such information shall not be deemed a waiver of any such

10  protection or privilege.  Tennison further objects to this Interrogatory on the ground that it calls

11  for information that constitutes attorney work product, was prepared in anticipation of or in

12  connection with litigation, discloses the mental impressions, conclusions, opinions or legal

13  theories of any attorneys for Tennison or for persons having a common interest with Tennison, or

14  is otherwise protected from disclosure under applicable privileges, laws or rules.  Any

15  inadvertent disclosure of such information shall not be deemed a waiver of any such protection

16  or privilege.  Tennison also objects to this Interrogatory on the ground that it calls for Tennison

17  to form a legal conclusion before offering any responses.  Tennison further objects to this

18  Interrogatory to the extent that it seeks information equally available to the City.  Tennison also

19  objects to this Interrogatory as premature because the City has not completed production of

20  materials responsive to Tennison's February 1, 2005 Second Set of Requests for Production of

21  Documents and Things, and/or other discovery requests pertinent to this inquiry, such as

22  Tennison's February 1, 2005 notice of deposition under Fed. R. Civ. P. 30(b)(6).  In fact, the

23  City has intentionally delayed providing discovery for these past four months to deprive from

24  Tennison further evidence of its liability in this case.  The City's demand for discovery under

25  these circumstances in troubling.

26  **INTERROGATORY NO. 4**

27      Please state all facts supporting your allegation in paragraph 44 of your complaint that

28  "SFPD did not supervise their activities, and Hendrix and Sanders were not constrained by

5

PLAINTIFF JOHN TENNISON'S RESPONSES TO DEFENDANT CITY AND COUNTY OF SAN
FRANCISCO'S FIRST SET OF INTERROGATORIES
CASE NO. C 04-00574 CW

351965.02

1   policies not of their making."

2   **RESPONSE TO INTERROGATORY NO. 4**

3       Tennison objects to this Interrogatory on the ground that it calls for information protected

4   from disclosure by the attorney-client privilege or any other applicable privileges or protections.

5   Any inadvertent disclosure of such information shall not be deemed a waiver of any such

6   protection or privilege.  Tennison further objects to this Interrogatory on the ground that it calls

7   for information that constitutes attorney work product, was prepared in anticipation of or in

8   connection with litigation, discloses the mental impressions, conclusions, opinions or legal

9   theories of any attorneys for Tennison or for persons having a common interest with Tennison, or

10  is otherwise protected from disclosure under applicable privileges, laws or rules.  Any

11  inadvertent disclosure of such information shall not be deemed a waiver of any such protection

12  or privilege.  Tennison also objects to this Interrogatory on the ground that it calls for Tennison

13  to form a legal conclusion before offering any responses.  Tennison further objects to this

14  Interrogatory to the extent that it seeks information equally available to City.

15      Tennison also objects to this Interrogatory as premature because the City has not

16  completed production of materials responsive to Tennison's February 1, 2005 Second Set of

17  Requests for Production of Documents and Things, and/or other discovery requests pertinent to

18  this inquiry, such as Tennison's February 1, 2005 notice of deposition under Fed. R. Civ.

19  P. 30(b)(6).  In fact, the City has intentionally delayed providing discovery for these past four

20  months to deprive from Tennison further evidence of its liability in this case.  The City's demand

21  for discovery under these circumstances in troubling.

22      Discovery regarding municipal liability is ongoing and Tennison reserves the right to

23  complete his investigation and discovery of the facts and his preparation for trial, to supplement

24  this Response, and to adduce evidence at trial that would have been included in this Response

25  had its existence been known to Tennison at this time.

26      Subject to and without waiving the specific and general objections above, Tennison sets

27  forth his information and belief as follows:

28      Defendants Hendrix's and Sanders' acts and/or omissions led to the violations of

351965.02

1   Tennison's constitutional rights and his 13 ½ years of wrongful imprisonment.  Had the City

2   provided Defendants Hendrix and Sanders with adequate supervision, they would not have,

3   absent willful disregard of this training, participated in the course of conduct detailed in the

4   Complaint, in Judge Wilken's Order granting Tennison's petition for writ of habeas corpus, and

5   as outlined below.

6       First, on November 7, 1990, after the jury verdict in Tennison's case but prior to the

7   hearing on his new-trial motion and his sentencing, Lovinsky Ricard confessed, on audiotape, to

8   the murder of Roderick Shannon in an interview with San Francisco Police Officers Michael

9   Lewis and Neville Gittens.  In their depositions in Tennison's habeas proceeding, defendants

10   Hendrix and Sanders both admitted to learning of the confession shortly after it was made.

11   Similarly, in his deposition in Tennison's habeas proceeding, Lewis confirmed that he informed

12   Hendrix and Sanders of the Ricard confession shortly after it was made.  In his deposition in this

13   case, Hendrix further confirmed that he learned of the confession between the jury verdict in

14   Tennison's case and the hearing on Tennison's new-trial motion, and that he took no steps to

15   ensure that the confession was turned over to the District Attorney or to Tennison's counsel.  In

16   fact, he testified that he did not listen to the tape of the confession after he learned of it and was

17   irritated at Officers Lewis and Gittens for having interviewed Ricard.  Defendant George

18   Butterworth denies that Hendrix or Sanders ever told him about the Ricard confession, and has

19   testified that he did not know of the confession until Lewis informed him of it at lunch on

20   May 17, 1991, during the hearing on Tennison's new-trial motion.  He further testified that, had

21   he known of the confession before that time, he immediately would have disclosed the

22   confession to Tennison's attorney.  Neither Tennison nor either of his attorneys, Jeffrey Adachi

23   and LeRue Grim, knew of the Ricard confession until Butterworth disclosed its existence on

24   May 17, 1991.  The taped confession, and any notes accompanying it, should have been

25   produced to Adachi on November 7, 1990.

26       Second, on October 4, 1989, Hendrix and Sanders formally requested $2,500 from the so-

27   called "Secret Witness Program," purportedly to pay a witness in connection with the SFPD

28   investigation of the homicide of Roderick Shannon.  At the time of the request, Masina Fauolo,

7

PLAINTIFF JOHN TENNISON'S RESPONSES TO DEFENDANT CITY AND COUNTY OF SAN
FRANCISCO'S FIRST SET OF INTERROGATORIES
CASE NO. C 04-00574 CW

351965.02

1   one of the two purported eyewitnesses who testified against Tennison at trial, had been talking to

2   the inspectors for six weeks, but had not yet made any formal, recorded statement.  Hendrix's

3   and Sanders' request was subsequently approved.  On October 11, 1989, Sanders withdrew

4   $1,250 from a police contingency fund.  On October 31, 1989, Fauolo made her first formal,

5   recorded statement to the police regarding the case.  That statement was inconsistent in

6   numerous material ways with the known physical evidence and the testimony of neighborhood

7   residents who witnessed the car chase preceding the Shannon murder.  On November 28, 1989,

8   Pauline Maluina, the other purported eyewitness against Tennison, made a formal, recorded

9   statement to police that was inconsistent in numerous material ways with the known physical

10  evidence, the testimony of neighborhood residents, and Fauolo's earlier statement.  In each of

11  those interviews, Hendrix supplied Maluina and Fauolo with critical information the girls later

12  claimed to have already known.  Four days later, on December 2, 1989, Hendrix withdrew

13  $1,120 from a police contingency fund.  Hendrix testified at his deposition that the Secret

14  Witness Program, by its nature, was kept secret from the District Attorney and that information

15  about requests and payments of money from the Secret Witness Program were not disclosed to

16  the District Attorney's office.  Defendant Butterworth confirmed at his deposition that he was

17  never aware of the request for funds, or any payment of funds to Fauolo, Maluina, Hendrix, or

18  Sanders, and that, if he had been, he immediately would have disclosed that information to

19  Tennison's attorney.  Neither Tennison nor either of his attorneys, Jeffrey Adachi and LeRue

20  Grim, knew of the Secret Witness Program request or any payment of funds to any witness until

21  fall 2001.  Neither Tennison not his counsel knew of Hendrix's and Sanders' receipt of

22  disbursements from Contingent Fund B until September 2003.  All of the materials reflecting

23  Hendrix's and Sanders' application for and receipt of approval of payments from the Secret

24  Witness Fund, disbursements from that fund, and disbursements from Contingent Fund B should

25  have been disclosed to Tennison's counsel prior to January 1, 1990.

26       Third, on January 3, 1990, Hendrix and Sanders interviewed Chante Smith, who claimed

27  to know that Tennison had not been present at the murder scene.  In addition to exonerating

28  Tennison and Antoine Goff, Smith also implicated a number of other individuals in the killing,

8

351965.02

1    including Lovinsky Ricard.  Sanders took notes of the interview which did not convey either

2    Smith's exculpatory statements regarding Tennison or her inculpatory statements regarding

3    Ricard and others.  Hendrix and Sanders turned these sketchy notes over to Butterworth, but, as

4    Butterworth testified at his deposition, the notes did not convey the exculpatory information

5    Smith had conveyed, and were too cryptic to be meaningful.  Neither Hendrix nor Sanders made

6    any effort to memorialize the exculpatory statements Smith had made to them, to inform

7    Butterworth, Tennison, or Tennison's counsel about those statements, or to follow up with Smith

8    regarding her knowledge of the Shannon murder, which directly conflicted with the case Hendrix

9    and Sanders presented to Butterworth.  Butterworth testified that he did not have knowledge,

10    from the notes or any other source, of Smith's exculpatory statements, and did not disclose those

11    statements to Tennison or his counsel.  Butterworth did not turn over the January 3 notes to

12    Tennison's counsel.  Indeed, Sanders participated in the State's opposition to Tennison's motion

13    for a new trial and submitted a declaration stating that Ricard's confession was unreliable

14    because it was uncorroborated.  Sanders made this false statement with the knowledge that,

15    months before, Smith had corroborated all the material facts in Ricard's story in an interview he

16    himself had conducted.  Neither Tennison nor his counsel knew of Smith's prior statement to the

17    police until 1992.  Tennison did not know about or receive the written notes of the Smith

18    interview until the fall of 2001  At some point after his conviction, Tennison learned that a

19    woman named "Chante" claimed to have witnessed the Shannon murder, but he did not know the

20    woman was Chante Smith and had previously given a statement to police.  He informed his

21    counsel of all the information he had about "Chante," but counsel was not able to locate her until

22    after Tennison was sentenced and sent to jail.

23         Fourth, on February 9, 1990, Sanders and San Francisco Police Inspector Nevil Gittens

24    interviewed Luther Blue.  During that interview, the police told Blue that they knew he was

25    present at the murder and that the car chase preceding the murder had started at the 7-Eleven on

26    Bayshore Boulevard, not at Lovers' Lane, as Fauolo and Maluina would testify at trial.  Hendrix

27    testified at deposition that, when interviewing a witness to a crime, he would not question the

28    witness by making statements he knew to be false.  Although the Blue interview was videotaped,

9
PLAINTIFF JOHN TENNISON'S RESPONSES TO DEFENDANT CITY AND COUNTY OF SAN
FRANCISCO'S FIRST SET OF INTERROGATORIES
CASE NO. C 04-00574 CW

351965.02

1   the tapes and notes about taped interviews produced to Tennison and his counsel in pretrial

2   discovery do not include the February 9 Blue interview.  Just five days later, on February 14,

3   1990, the police again interviewed Blue.  The interview was conducted by Sanders and Hendrix.

4   This time they said nothing about Blue's presence at the murder or the beginning of the car

5   chase; they asked Blue whether he was involved and, when he denied being involved, they ended

6   the interview.  The State then produced to Tennison only the tape of this second interview, rather

7   than the tape and notes from the far more informative first interview.  The State likewise omitted

8   any mention of the first Blue interview from the discovery log it produced to Tennison.  As a

9   result, the log was materially misleading and created for the purpose of suppressing key evidence

10  from Tennison.  The log ultimately produced to Tennison – as described in the deposition of

11  Adachi – likewise omitted other important events, including a January 3, 1990 interview of a

12  "witness" who, Tennison discovered from discovery finally turned over in the habeas litigation

13  in 2001, was Chante Smith.  Neither Tennison nor his attorneys knew of the February 9 Blue

14  interview or the notes from it until fall 2001.

15        Fifth, on April 24, 1990, Hendrix and Butterworth participated in the administration of a

16  polygraph test to Pauline Maluina.  At the time, Maluina had recanted her previous testimony

17  that she had been present when Shannon was killed.  She had previously been questioned on

18  April 22 and 23, and on both days had stated that she was not a witness to a murder.  On

19  April 24, her third consecutive day of police questioning, she repeated during the polygraph that

20  she was not a witness to the Shannon murder and previously had testified falsely under oath.

21  Hendrix, Butterworth, and Sanders were aware of the fact and results of the polygraph

22  examination, but did not inform Tennison or his counsel of the examination.  Tennison was

23  unaware of the role of the polygraph in Butterworth's, Hendrix's, and Sanders' three-day

24  campaign to bully Maluina to retract her recantation of her previous testimony.  Tennison and his

25  counsel did not know about, or receive information or materials from, the polygraph or police

26  memorandum describing the polygraph until fall 2001, and did not know about the continued

27  existence of or have access to the polygraph administration materials until March 2005.

28        Sixth, during the three-day bullying campaign, when Masina Fauolo's veracity was being

10

1 challenged by Maluina and should have been in very serious doubt in the eyes of any reasonable

2 police officer, Hendrix and Sanders interviewed Fauolo and recorded that interview on

3 audiotape.  Defendants never produced the tapes of that interview to Tennison, in fulfillment of

4 their Brady v. Maryland obligations, in the underlying criminal case or in response to Tennison's

5 valid subpoena in his habeas suit.  The tapes initially were not produced in response to

6 Tennison's discovery requests in this suit.  The Defendants did not produced the tapes until

7 May 2005, and then only after Magistrate Judge Chen ordered the tapes produced following a

8 lengthy legal battle.  Tennison first learned of the existence of the tapes in discovery in this case.

9 Defendants maintain that the tapes are blank or inaudible refused to allow Tennison to take

10 possession of them in order to perform non-destructive testing until the Court ordered them to.

11 The only reasonable inference is that the tapes contain (or used to contain) information favorable

12 to Tennison's case and have continually been suppressed by defendants in order to conceal that

13 information from Tennison.  If the tapes are indeed blank, the only reasonable inference is that

14 defendants destroyed the content of the tapes in a deliberate, bad-faith effort to conceal evidence

15 favorable to Tennison.

16       Seventh, Hendrix and Sanders engaged in a pattern of manufacturing testimony through

17 their interviews with Fauolo and Maluina.  During Masina Fauolo's first two telephone calls with

18 Hendrix in August 1989, Fauolo knew next to nothing about the homicide.  During Hendrix's

19 first recorded interview with Fauolo (who by that time had been talking to Hendrix and Sanders

20 for six weeks), Fauolo knew more, but still knew nothing about the facts of the homicide.

21 Hendrix and Sanders supplied her with critical details, creating an inaccurate tale about the car

22 chase preceding the murder and the murder itself, which Fauolo would go on to parrot at trial.

23 Fauolo's testimony was materially inconsistent with the known physical evidence and the

24 statements of neighborhood residents who witnessed the car chase.  For these reasons and others,

25 any reasonable police officer would have known that Fauolo was not a witness to any murder.

26 But despite the obvious signs that Fauolo was lying, Hendrix and Sanders assisted her in

27 concocting presentable (yet false) trial testimony.  Similarly, during Hendrix's first recorded

28 interview with Maluina, she knew virtually nothing about the facts of the case.  The details she

PLAINTIFF JOHN TENNISON'S RESPONSES TO DEFENDANT CITY AND COUNTY OF SAN
FRANCISCO'S FIRST SET OF INTERROGATORIES
CASE NO. C 04-00574 CW

351965.02

1   did profess to know could not be reconciled with Fauolo's false statements, let alone the physical

2   evidence or statements of neighborhood residents.  During that interview, Hendrix supplied

3   Maluina with numerous key facts, including without limitation the location of the car crash, the

4   location of the murder, and the type of gun used to shoot Shannon.  Again, any reasonable police

5   officer would have known that Maluina was not a witness to the Shannon murder.

6        Indeed, after giving perjured testimony at Tennison's 707 hearing, Maluina recanted that

7   testimony and attempted to come clean, telling Hendrix and Butterworth that she had not

8   witnessed the Shannon murder.  Despite all these clear indications that the narrations Hendrix

9   and Sanders helped the girls to concoct were patently untrue, Hendrix and Sanders assisted

10  Butterworth in bullying Maluina into withdrawing her recantation – including using Fauolo, the

11  person whom Maluina claimed coerced her false testimony in the first place – to pressure

12  Maluina to withdraw her claim that she lied and was bullied by Fauolo into lying, and then

13  manufacturing Maluina's perjured testimony, which subsequently was offered at trial and played

14  a key role in Tennison's unjust conviction.

15       Hendrix and Sanders also checked out and verified Mr. Tennison's alibi in

16  November 1989, but proceeded to manufacture the case against him anyway.

17       In the 1980's, the San Francisco Police Department assigned Napoleon Hendrix and Earl

18  Sanders to focus on alleged gang-related murders.  In that capacity, Hendrix and Sanders worked

19  with the Gang Task Force, a group of police officers charged with stopping gang activity

20  generally, and that Hendrix and Sanders were given authority over the Gang Task Force with

21  respect to any alleged gang-related homicide, and frequently used GTF officers to collect

22  information and evidence as part of their homicide investigations.  Solving possibly gang-related

23  murders was such a high priority for the SFPD, and Hendrix and Sanders personally, that the two

24  inspectors met with the Gang Task Force every day at noon for years during the late 1980s and

25  1990s to discuss alleged gang-related killings.  No authority within the SFPD supervised

26  Hendrix's and Sanders' decision making with regard to the investigation and arrest of alleged

27  gang-related suspects.  Instead, that authority was delegated to Hendrix and Sanders.

28       Nevertheless when Tennison inquired further about Hendrix's and Sanders' training and

12
PLAINTIFF JOHN TENNISON'S RESPONSES TO DEFENDANT CITY AND COUNTY OF SAN
FRANCISCO'S FIRST SET OF INTERROGATORIES
CASE NO. C 04-00574 CW

351965.02

1 procedures at those individuals' depositions, defense counsel restricted inquiring into these

2 matters. The City has yet to present witnesses who will testify as to any policies or procedures

3 which governed Hendrix's and Sanders' (mis)conduct.

**INTERROGATORY NO. 5**

5     Please identify (i.e., provide name and all known addresses and phone numbers) all

6 persons with knowledge of the facts stated in your response to interrogatory 4.

**RESPONSE TO INTERROGATORY NO. 5**

8     Tennison objects to this Interrogatory on the ground that it calls for Tennison to form a

9 legal conclusion before offering any responses. Tennison further objects to this Interrogatory to

10 the extent that it seeks information equally available to City. Tennison also objects to this

11 Interrogatory as premature because the City has not completed production of materials

12 responsive to Tennison's February 1, 2005 Second Set of Requests for Production of Documents

13 and Things, and/or other discovery requests pertinent to this inquiry, such as Tennison's

14 February 1, 2005 notice of deposition under Fed. R. Civ. P. 30(b)(6). In fact, the City has

15 intentionally delayed providing discovery for these past four months to deprive from Tennison

16 further evidence of its liability in this case. The City's demand for discovery under these

17 circumstances in troubling.

18     Discovery regarding municipal liability is ongoing and Tennison reserves the right to

19 complete his investigation and discovery of the facts and his preparation for trial, to supplement

20 this Response, and to adduce evidence at trial that would have been included in this Response

21 had its existence been known to Tennison at this time.

22     Subject to and without waiving the specific and general objections above, Tennison sets

23 forth his information and belief that persons with knowledge of these facts include:

24     Napoleon Hendrix

25     Prentice Earl Sanders

26     Gerald McCarthy

27     Neville Gittens

28     Michael Lewis

PLAINTIFF JOHN TENNISON'S RESPONSES TO DEFENDANT CITY AND COUNTY OF SAN
FRANCISCO'S FIRST SET OF INTERROGATORIES
CASE NO. C 04-00574 CW

1  Leroy Lindo

2  Chante Smith

3  Luther Blue

4  George Butterworth

5  Lovinsky Ricard

6  Pauline Maluina

7  Frank Jordan

8  Masina Fauolo

9  **INTERROGATORY NO. 6**

10  Please identify all documents supporting or otherwise relating to your response to

11  interrogatory 4.

12  **RESPONSE TO INTERROGATORY NO. 6**

13  Tennison objects to this Interrogatory on the ground that it calls for information protected

14  from disclosure by the attorney-client privilege or any other applicable privileges or protections.

15  Any inadvertent disclosure of such information shall not be deemed a waiver of any such

16  protection or privilege.  Tennison further objects to this Interrogatory on the ground that it calls

17  for information that constitutes attorney work product, was prepared in anticipation of or in

18  connection with litigation, discloses the mental impressions, conclusions, opinions or legal

19  theories of any attorneys for Tennison or for persons having a common interest with Tennison, or

20  is otherwise protected from disclosure under applicable privileges, laws or rules.  Any

21  inadvertent disclosure of such information shall not be deemed a waiver of any such protection

22  or privilege.  Tennison also objects to this Interrogatory on the ground that it calls for Tennison

23  to form a legal conclusion before offering any responses.  Tennison further objects to this

24  Interrogatory to the extent that it seeks information equally available to City.  Tennison also

25  objects to this Interrogatory as premature because the City has not completed production of

26  materials responsive to Tennison's February 1, 2005 Second Set of Requests for Production of

27  Documents and Things, and/or other discovery requests pertinent to this inquiry, such as

28  Tennison's February 1, 2005 notice of deposition under Fed. R. Civ. P. 30(b)(6).  In fact, the

14

PLAINTIFF JOHN TENNISON'S RESPONSES TO DEFENDANT CITY AND COUNTY OF SAN
FRANCISCO'S FIRST SET OF INTERROGATORIES
CASE NO. C 04-00574 CW

1    City has intentionally delayed providing discovery for these past four months to deprive from

2    Tennison further evidence of its liability in this case.  The City's demand for discovery under

3    these circumstances in troubling.

4    **INTERROGATORY NO. 7**

5         Please state all facts supporting your allegation in paragraph 45 of your complaint that

6    "SFPD failed adequately to provide its officers, Inspectors Sanders and Hendrix , with sufficient

7    training regarding the preservation and production of exculpatory evidence . . . ."

8    **RESPONSE TO INTERROGATORY NO. 7**

9         Tennison objects to this Interrogatory on the ground that it calls for information protected

10   from disclosure by the attorney-client privilege or any other applicable privileges or protections.

11   Any inadvertent disclosure of such information shall not be deemed a waiver of any such

12   protection or privilege.  Tennison further objects to this Interrogatory on the ground that it calls

13   for information that constitutes attorney work product, was prepared in anticipation of or in

14   connection with litigation, discloses the mental impressions, conclusions, opinions or legal

15   theories of any attorneys for Tennison or for persons having a common interest with Tennison, or

16   is otherwise protected from disclosure under applicable privileges, laws or rules.  Any

17   inadvertent disclosure of such information shall not be deemed a waiver of any such protection

18   or privilege.  Tennison also objects to this Interrogatory on the ground that it calls for Tennison

19   to form a legal conclusion before offering any responses.  Tennison further objects to this

20   Interrogatory to the extent that it seeks information equally available to City.  Tennison also

21   objects to this Interrogatory as premature because the City has not completed production of

22   materials responsive to Tennison's February 1, 2005 Second Set of Requests for Production of

23   Documents and Things, and/or other discovery requests pertinent to this inquiry, such as

24   Tennison's February 1, 2005 notice of deposition under Fed. R. Civ. P. 30(b)(6).  In fact, the

25   City has intentionally delayed providing discovery for these past four months to deprive from

26   Tennison further evidence of its liability in this case.  The City's demand for discovery under

27   these circumstances in troubling.

28        Discovery regarding municipal liability is ongoing and Tennison reserves the right to

15

351965.02

1   complete his investigation and discovery of the facts and his preparation for trial, to supplement

2   this Response, and to adduce evidence at trial that would have been included in this Response

3   had its existence been known to Tennison at this time.

4        Subject to and without waiving the specific and general objections above, Tennison

5   responds as follows:

6        Defendants Hendrix's and Sanders' acts and/or omissions led to the violations of

7   Tennison's constitutional rights and his 13 ½ years of wrongful imprisonment.  Had the City

8   provided Defendants Hendrix and Sanders adequate training regarding the preservation and

9   production of exculpatory evidence, they would not have, absent willful disregard of this

10  training, participated in the course of conduct detailed in the Complaint, in Judge Wilken's Order

11  granting Tennison's petition for writ of habeas corpus, and as outlined below.

12       First, on November 7, 1990, after the jury verdict in Tennison's case but prior to the

13  hearing on his new-trial motion and his sentencing, Lovinsky Ricard confessed, on audiotape, to

14  the murder of Roderick Shannon in an interview with San Francisco Police Officers Michael

15  Lewis and Neville Gittens.  In their depositions in Tennison's habeas proceeding, defendants

16  Hendrix and Sanders both admitted to learning of the confession shortly after it was made.

17  Similarly, in his deposition in Tennison's habeas proceeding, Lewis confirmed that he informed

18  Hendrix and Sanders of the Ricard confession shortly after it was made.  In his deposition in this

19  case, Hendrix further confirmed that he learned of the confession between the jury verdict in

20  Tennison's case and the hearing on Tennison's new-trial motion, and that he took no steps to

21  ensure that the confession was turned over to the District Attorney or to Tennison's counsel.  In

22  fact, he testified that he did not listen to the tape of the confession after he learned of it and was

23  irritated at Officers Lewis and Gittens for having interviewed Ricard.  Defendant George

24  Butterworth denies that Hendrix or Sanders ever told him about the Ricard confession, and has

25  testified that he did not know of the confession until Lewis informed him of it at lunch on

26  May 17, 1991, during the hearing on Tennison's new-trial motion.  He further testified that, had

27  he known of the confession before that time, he immediately would have disclosed the

28  confession to Tennison's attorney.  Neither Tennison nor either of his attorneys, Jeffrey Adachi

16

351965.02

1    and LeRue Grim, knew of the Ricard confession until Butterworth disclosed its existence on

2    May 17, 1991. The taped confession, and any notes accompanying it, should have been

3    produced to Adachi on November 7, 1990.

4          Second, on October 4, 1989, Hendrix and Sanders formally requested $2,500 from the so-

5    called "Secret Witness Program," purportedly to pay a witness in connection with the SFPD

6    investigation of the homicide of Roderick Shannon. At the time of the request, Masina Fauolo,

7    one of the two purported eyewitnesses who testified against Tennison at trial, had been talking to

8    the inspectors for six weeks, but had not yet made any formal, recorded statement. Hendrix's

9    and Sanders' request was subsequently approved. On October 11, 1989, Sanders withdrew

10   $1,250 from a police contingency fund. On October 31, 1989, Fauolo made her first formal,

11   recorded statement to the police regarding the case. That statement was inconsistent in

12   numerous material ways with the known physical evidence and the testimony of neighborhood

13   residents who witnessed the car chase preceding the Shannon murder. On November 28, 1989,

14   Pauline Maluina, the other purported eyewitness against Tennison, made a formal, recorded

15   statement to police that was inconsistent in numerous material ways with the known physical

16   evidence, the testimony of neighborhood residents, and Fauolo's earlier statement. In each of

17   those interviews, Hendrix supplied Maluina and Fauolo with critical information the girls later

18   claimed to have already known. Four days later, on December 2, 1989, Hendrix withdrew

19   $1,120 from a police contingency fund. Hendrix testified at his deposition that the Secret

20   Witness Program, by its nature, was kept secret from the District Attorney and that information

21   about requests and payments of money from the Secret Witness Program were not disclosed to

22   the District Attorney's office. Defendant Butterworth confirmed at his deposition that he was

23   never aware of the request for funds, or any payment of funds to Fauolo, Maluina, Hendrix, or

24   Sanders, and that, if he had been, he immediately would have disclosed that information to

25   Tennison's attorney. Neither Tennison nor either of his attorneys, Jeffrey Adachi and LeRue

26   Grim, knew of the Secret Witness Program request or any payment of funds to any witness until

27   fall 2001. Neither Tennison not his counsel knew of Hendrix's and Sanders' receipt of

28   disbursements from Contingent Fund B until September 2003. All of the materials reflecting

17

1   Hendrix's and Sanders' application for and receipt of approval of payments from the Secret

2   Witness Fund, disbursements from that fund, and disbursements from Contingent Fund B should

3   have been disclosed to Tennison's counsel prior to January 1, 1990.

4          Third, on January 3, 1990, Hendrix and Sanders interviewed Chante Smith, who claimed

5   to know that Tennison had not been present at the murder scene.  In addition to exonerating

6   Tennison and Antoine Goff, Smith also implicated a number of other individuals in the killing,

7   including Lovinsky Ricard.  Sanders took notes of the interview which did not convey either

8   Smith's exculpatory statements regarding Tennison or her inculpatory statements regarding

9   Ricard and others.  Hendrix and Sanders turned these sketchy notes over to Butterworth, but, as

10  Butterworth testified at his deposition, the notes did not convey the exculpatory information

11  Smith had conveyed, and were too cryptic to be meaningful.  Neither Hendrix nor Sanders made

12  any effort to memorialize the exculpatory statements Smith had made to them, to inform

13  Butterworth, Tennison, or Tennison's counsel about those statements, or to follow up with Smith

14  regarding her knowledge of the Shannon murder, which directly conflicted with the case Hendrix

15  and Sanders presented to Butterworth.  Butterworth testified that he did not have knowledge,

16  from the notes or any other source, of Smith's exculpatory statements, and did not disclose those

17  statements to Tennison or his counsel.  Butterworth did not turn over the January 3 notes to

18  Tennison's counsel.  Indeed, Sanders participated in the State's opposition to Tennison's motion

19  for a new trial and submitted a declaration stating that Ricard's confession was unreliable

20  because it was uncorroborated.  Sanders made this false statement with the knowledge that,

21  months before, Smith had corroborated all the material facts in Ricard's story in an interview he

22  himself had conducted.  Neither Tennison nor his counsel knew of Smith's prior statement to the

23  police until 1992.  Tennison did not know about or receive the written notes of the Smith

24  interview until the fall of 2001  At some point after his conviction, Tennison learned that a

25  woman named "Chante" claimed to have witnessed the Shannon murder, but he did not know the

26  woman was Chante Smith and had previously given a statement to police.  He informed his

27  counsel of all the information he had about "Chante," but counsel was not able to locate her until

28  after Tennison was sentenced and sent to jail.

PLAINTIFF JOHN TENNISON'S RESPONSES TO DEFENDANT CITY AND COUNTY OF SAN
FRANCISCO'S FIRST SET OF INTERROGATORIES
CASE NO. C 04-00574 CW

351965.02

1        Fourth, on February 9, 1990, Sanders and San Francisco Police Inspector Nevil Gittens

2   interviewed Luther Blue.  During that interview, the police told Blue that they knew he was

3   present at the murder and that the car chase preceding the murder had started at the 7-Eleven on

4   Bayshore Boulevard, not at Lovers' Lane, as Fauolo and Maluina would testify at trial.  Hendrix

5   testified at deposition that, when interviewing a witness to a crime, he would not question the

6   witness by making statements he knew to be false.  Although the Blue interview was videotaped,

7   the tapes and notes about taped interviews produced to Tennison and his counsel in pretrial

8   discovery do not include the February 9 Blue interview.  Just five days later, on

9   February 14, 1990, the police again interviewed Blue.  The interview was conducted by Sanders

10  and Hendrix.  This time they said nothing about Blue's presence at the murder or the beginning

11  of the car chase; they asked Blue whether he was involved and, when he denied being involved,

12  they ended the interview.  The State then produced to Tennison only the tape of this second

13  interview, rather than the tape and notes from the far more informative first interview.  The State

14  likewise omitted any mention of the first Blue interview from the discovery log it produced to

15  Tennison.  As a result, the log was materially misleading and created for the purpose of

16  suppressing key evidence from Tennison.  The log ultimately produced to Tennison – as

17  described in the deposition of Adachi – likewise omitted other important events, including a

18  January 3, 1990 interview of a "witness" who, Tennison discovered from discovery finally

19  turned over in the habeas litigation in 2001, was Chante Smith.  Neither Tennison nor his

20  attorneys knew of the February 9 Blue interview or the notes from it until fall 2001.

21       Fifth, on April 24, 1990, Hendrix and Butterworth participated in the administration of a

22  polygraph test to Pauline Maluina.  At the time, Maluina had recanted her previous testimony

23  that she had been present when Shannon was killed.  She had previously been questioned on

24  April 22 and 23, and on both days had stated that she was not a witness to a murder.  On

25  April 24, her third consecutive day of police questioning, she repeated during the polygraph that

26  she was not a witness to the Shannon murder and previously had testified falsely under oath.

27  Hendrix, Butterworth, and Sanders were aware of the fact and results of the polygraph

28  examination, but did not inform Tennison or his counsel of the examination.  Tennison was

19

351965.02

1  unaware of the role of the polygraph in Butterworth's, Hendrix's, and Sanders' three-day

2  campaign to bully Maluina to retract her recantation of her previous testimony.  Tennison and his

3  counsel did not know about, or receive information or materials from, the polygraph or police

4  memorandum describing the polygraph until fall 2001, and did not know about the continued

5  existence of or have access to the polygraph administration materials until March 2005.

6       Sixth, during the three-day bullying campaign, when Masina Fauolo's veracity was being

7  challenged by Maluina and should have been in very serious doubt in the eyes of any reasonable

8  police officer, Hendrix and Sanders interviewed Fauolo and recorded that interview on

9  audiotape.  Defendants never produced the tapes of that interview to Tennison, in fulfillment of

10  their Brady v. Maryland obligations, in the underlying criminal case or in response to Tennison's

11  valid subpoena in his habeas suit.  The tapes initially were not produced in response to

12  Tennison's discovery requests in this suit.  The Defendants did not produced the tapes until

13  May 2005, and then only after Magistrate Judge Chen ordered the tapes produced following a

14  lengthy legal battle.  Tennison first learned of the existence of the tapes in discovery in this case.

15  Defendants maintain that the tapes are blank or inaudible refused to allow Tennison to take

16  possession of them in order to perform non-destructive testing until the Court ordered them to.

17  The only reasonable inference is that the tapes contain (or used to contain) information favorable

18  to Tennison's case and have continually been suppressed by defendants in order to conceal that

19  information from Tennison.  If the tapes are indeed blank, the only reasonable inference is that

20  defendants destroyed the content of the tapes in a deliberate, bad-faith effort to conceal evidence

21  favorable to Tennison.

22       Seventh, Hendrix and Sanders engaged in a pattern of manufacturing testimony through

23  their interviews with Fauolo and Maluina.  During Masina Fauolo's first two telephone calls with

24  Hendrix in August 1989, Fauolo knew next to nothing about the homicide.  During Hendrix's

25  first recorded interview with Fauolo (who by that time had been talking to Hendrix and Sanders

26  for six weeks), Fauolo knew more, but still knew nothing about the facts of the homicide.

27  Hendrix and Sanders supplied her with critical details, creating an inaccurate tale about the car

28  chase preceding the murder and the murder itself, which Fauolo would go on to parrot at trial.

1   Fauolo's testimony was materially inconsistent with the known physical evidence and the

2   statements of neighborhood residents who witnessed the car chase.  For these reasons and others,

3   any reasonable police officer would have known that Fauolo was not a witness to any murder.

4   But despite the obvious signs that Fauolo was lying, Hendrix and Sanders assisted her in

5   concocting presentable (yet false) trial testimony.  Similarly, during Hendrix's first recorded

6   interview with Maluina, she knew virtually nothing about the facts of the case.  The details she

7   did profess to know could not be reconciled with Fauolo's false statements, let alone the physical

8   evidence or statements of neighborhood residents.  During that interview, Hendrix supplied

9   Maluina with numerous key facts, including without limitation the location of the car crash, the

10   location of the murder, and the type of gun used to shoot Shannon.  Again, any reasonable police

11   officer would have known that Maluina was not a witness to the Shannon murder.

12          Indeed, after giving perjured testimony at Tennison's 707 hearing, Maluina recanted that

13   testimony and attempted to come clean, telling Hendrix and Butterworth that she had not

14   witnessed the Shannon murder.  Despite all these clear indications that the narrations Hendrix

15   and Sanders helped the girls to concoct were patently untrue, Hendrix and Sanders assisted

16   Butterworth in bullying Maluina into withdrawing her recantation – including using Fauolo, the

17   person whom Maluina claimed coerced her false testimony in the first place – to pressure

18   Maluina to withdraw her claim that she lied and was bullied by Fauolo into lying, and then

19   manufacturing Maluina's perjured testimony, which subsequently was offered at trial and played

20   a key role in Tennison's unjust conviction.

21          Finally, Hendrix and Sanders checked out and verified Mr. Tennison's alibi in

22   November 1989, but proceeded to manufacture the case against him anyway.

23   **INTERROGATORY NO. 8**

24          Please identify (i.e., provide name and all known addresses and phone numbers) all

25   persons with knowledge of the facts stated in your response to interrogatory 7.

26   **RESPONSE TO INTERROGATORY NO. 8**

27          Tennison objects to this Interrogatory to the extent that it seeks information equally

28   available to City.  Tennison also objects to this Interrogatory as premature because the City has

351965.02

1   not completed production of materials responsive to Tennison's February 1, 2005 Second Set of

2   Requests for Production of Documents and Things, and/or other discovery requests pertinent to

3   this inquiry, such as Tennison's February 1, 2005 notice of deposition under Fed. R. Civ.

4   P. 30(b)(6).  In fact, the City has intentionally delayed providing discovery for these past four

5   months to deprive from Tennison further evidence of its liability in this case.  The City's demand

6   for discovery under these circumstances in troubling.

7         Discovery regarding municipal liability is ongoing and Tennison reserves the right to

8   complete his investigation and discovery of the facts and his preparation for trial, to supplement

9   this Response, and to adduce evidence at trial that would have been included in this Response

10   had its existence been known to Tennison at this time.

11         Subject to and without waiving the specific and general objections above, Tennison sets

12   forth his information and belief that persons with knowledge of these facts include:

13         Napoleon Hendrix

14         Prentice Earl Sanders

15         Gerald McCarthy

16         Neville Gittens

17         Michael Lewis

18         Leroy Lindo

19         Chante Smith

20         Luther Blue

21         George Butterworth

22         Lovinsky Ricard

23         Pauline Maluina

24         Frank Jordan

25         Masina Fauolo

26   **INTERROGATORY NO. 9**

27         Please identify all documents supporting or otherwise relating to your response to

28   interrogatory 7.

351965.02

**RESPONSE TO INTERROGATORY NO. 9**

     Tennison objects to this Interrogatory on the ground that it calls for information protected from disclosure by the attorney-client privilege or any other applicable privileges or protections. Any inadvertent disclosure of such information shall not be deemed a waiver of any such protection or privilege. Tennison further objects to this Interrogatory on the ground that it calls for information that constitutes attorney work product, was prepared in anticipation of or in connection with litigation, discloses the mental impressions, conclusions, opinions or legal theories of any attorneys for Tennison or for persons having a common interest with Tennison, or is otherwise protected from disclosure under applicable privileges, laws or rules. Any inadvertent disclosure of such information shall not be deemed a waiver of any such protection or privilege. Tennison further objects to this Interrogatory to the extent that it seeks information equally available to City. Tennison also objects to this Interrogatory as premature because the City has not completed production of materials responsive to Tennison's February 1, 2005 Second Set of Requests for Production of Documents and Things, and/or other discovery requests pertinent to this inquiry, such as Tennison's February 1, 2005 notice of deposition under Fed. R. Civ. P. 30(b)(6). In fact, the City has intentionally delayed providing discovery for these past four months to deprive from Tennison further evidence of its liability in this case. The City's demand for discovery under these circumstances in troubling.

**INTERROGATORY NO. 10**

     Please state all facts supporting your allegation in paragraph 45 of your complaint that "SFPD failed to promulgate appropriate policies to prevent the suppression of such exculpatory evidence."

**RESPONSE TO INTERROGATORY NO. 10**

     Tennison objects to this Interrogatory on the ground that it calls for information protected from disclosure by the attorney-client privilege or any other applicable privileges or protections. Any inadvertent disclosure of such information shall not be deemed a waiver of any such protection or privilege. Tennison further objects to this Interrogatory on the ground that it calls for information that constitutes attorney work product, was prepared in anticipation of or in

1  connection with litigation, discloses the mental impressions, conclusions, opinions or legal

2  theories of any attorneys for Tennison or for persons having a common interest with Tennison, or

3  is otherwise protected from disclosure under applicable privileges, laws or rules.  Any

4  inadvertent disclosure of such information shall not be deemed a waiver of any such protection

5  or privilege.  Tennison also objects to this Interrogatory on the ground that it calls for Tennison

6  to form a legal conclusion before offering any responses.  Tennison further objects to this

7  Interrogatory to the extent that it seeks information equally available to City.  Tennison also

8  objects to this Interrogatory as premature because the City has not completed production of

9  materials responsive to Tennison's February 1, 2005 Second Set of Requests for Production of

10 Documents and Things, and/or other discovery requests pertinent to this inquiry, such as

11 Tennison's February 1, 2005 notice of deposition under Fed. R. Civ. P. 30(b)(6).  In fact, the

12 City has intentionally delayed providing discovery for these past four months to deprive from

13 Tennison further evidence of its liability in this case.  The City's demand for discovery under

14 these circumstances in troubling.

15      Discovery regarding municipal liability is ongoing and Tennison reserves the right to

16 complete his investigation and discovery of the facts and his preparation for trial, to supplement

17 this Response, and to adduce evidence at trial that would have been included in this Response

18 had its existence been known to Tennison at this time.

19      Subject to and without waiving the specific and general objections above, Tennison

20 responds as follows:

21      Defendants' acts and/or omissions led to the violations of Tennison's constitutional rights

22 and his 13 ½ years of wrongful imprisonment.  Had the City promulgated appropriate policies to

23 preserve the suppression of exculpatory evidence, Defendants would not have, absent willful

24 disregard of these policies, participated in the course of conduct detailed in the Complaint, in

25 Judge Wilken's Order granting Tennison's petition for writ of habeas corpus, and as outlined

26 below.

27      First, on November 7, 1990, after the jury verdict in Tennison's case but prior to the

28 hearing on his new-trial motion and his sentencing, Lovinsky Ricard confessed, on audiotape, to

1   the murder of Roderick Shannon in an interview with San Francisco Police Officers Michael

2   Lewis and Neville Gittens.  In their depositions in Tennison's habeas proceeding, defendants

3   Hendrix and Sanders both admitted to learning of the confession shortly after it was made.

4   Similarly, in his deposition in Tennison's habeas proceeding, Lewis confirmed that he informed

5   Hendrix and Sanders of the Ricard confession shortly after it was made.  In his deposition in this

6   case, Hendrix further confirmed that he learned of the confession between the jury verdict in

7   Tennison's case and the hearing on Tennison's new-trial motion, and that he took no steps to

8   ensure that the confession was turned over to the District Attorney or to Tennison's counsel.  In

9   fact, he testified that he did not listen to the tape of the confession after he learned of it and was

10   irritated at Officers Lewis and Gittens for having interviewed Ricard.  Defendant George

11   Butterworth denies that Hendrix or Sanders ever told him about the Ricard confession, and has

12   testified that he did not know of the confession until Lewis informed him of it at lunch on

13   May 17, 1991, during the hearing on Tennison's new-trial motion.  He further testified that, had

14   he known of the confession before that time, he immediately would have disclosed the

15   confession to Tennison's attorney.  Neither Tennison nor either of his attorneys, Jeffrey Adachi

16   and LeRue Grim, knew of the Ricard confession until Butterworth disclosed its existence on

17   May 17, 1991.  The taped confession, and any notes accompanying it, should have been

18   produced to Adachi on November 7, 1990.

19        Second, on October 4, 1989, Hendrix and Sanders formally requested $2,500 from the so-

20   called "Secret Witness Program," purportedly to pay a witness in connection with the SFPD

21   investigation of the homicide of Roderick Shannon.  At the time of the request, Masina Fauolo,

22   one of the two purported eyewitnesses who testified against Tennison at trial, had been talking to

23   the inspectors for six weeks, but had not yet made any formal, recorded statement.  Hendrix's

24   and Sanders' request was subsequently approved.  On October 11, 1989, Sanders withdrew

25   $1,250 from a police contingency fund.  On October 31, 1989, Fauolo made her first formal,

26   recorded statement to the police regarding the case.  That statement was inconsistent in

27   numerous material ways with the known physical evidence and the testimony of neighborhood

28   residents who witnessed the car chase preceding the Shannon murder.  On November 28, 1989,

25

PLAINTIFF JOHN TENNISON'S RESPONSES TO DEFENDANT CITY AND COUNTY OF SAN
FRANCISCO'S FIRST SET OF INTERROGATORIES
CASE NO. C 04-00574 CW

351965.02

1  Pauline Maluina, the other purported eyewitness against Tennison, made a formal, recorded

2  statement to police that was inconsistent in numerous material ways with the known physical

3  evidence, the testimony of neighborhood residents, and Fauolo's earlier statement. In each of

4  those interviews, Hendrix supplied Maluina and Fauolo with critical information the girls later

5  claimed to have already known. Four days later, on December 2, 1989, Hendrix withdrew

6  $1,120 from a police contingency fund. Hendrix testified at his deposition that the Secret

7  Witness Program, by its nature, was kept secret from the District Attorney and that information

8  about requests and payments of money from the Secret Witness Program were not disclosed to

9  the District Attorney's office. Defendant Butterworth confirmed at his deposition that he was

10  never aware of the request for funds, or any payment of funds to Fauolo, Maluina, Hendrix, or

11  Sanders, and that, if he had been, he immediately would have disclosed that information to

12  Tennison's attorney. Neither Tennison nor either of his attorneys, Jeffrey Adachi and LeRue

13  Grim, knew of the Secret Witness Program request or any payment of funds to any witness until

14  fall 2001. Neither Tennison not his counsel knew of Hendrix's and Sanders' receipt of

15  disbursements from Contingent Fund B until September 2003. All of the materials reflecting

16  Hendrix's and Sanders' application for and receipt of approval of payments from the Secret

17  Witness Fund, disbursements from that fund, and disbursements from Contingent Fund B should

18  have been disclosed to Tennison's counsel prior to January 1, 1990.

19        Third, on January 3, 1990, Hendrix and Sanders interviewed Chante Smith, who claimed

20  to know that Tennison had not been present at the murder scene. In addition to exonerating

21  Tennison and Antoine Goff, Smith also implicated a number of other individuals in the killing,

22  including Lovinsky Ricard. Sanders took notes of the interview which did not convey either

23  Smith's exculpatory statements regarding Tennison or her inculpatory statements regarding

24  Ricard and others. Hendrix and Sanders turned these sketchy notes over to Butterworth, but, as

25  Butterworth testified at his deposition, the notes did not convey the exculpatory information

26  Smith had conveyed, and were too cryptic to be meaningful. Neither Hendrix nor Sanders made

27  any effort to memorialize the exculpatory statements Smith had made to them, to inform

28  Butterworth, Tennison, or Tennison's counsel about those statements, or to follow up with Smith

1  regarding her knowledge of the Shannon murder, which directly conflicted with the case Hendrix

2  and Sanders presented to Butterworth.  Butterworth testified that he did not have knowledge,

3  from the notes or any other source, of Smith's exculpatory statements, and did not disclose those

4  statements to Tennison or his counsel.  Butterworth did not turn over the January 3 notes to

5  Tennison's counsel.  Indeed, Sanders participated in the State's opposition to Tennison's motion

6  for a new trial and submitted a declaration stating that Ricard's confession was unreliable

7  because it was uncorroborated.  Sanders made this false statement with the knowledge that,

8  months before, Smith had corroborated all the material facts in Ricard's story in an interview he

9  himself had conducted.  Neither Tennison nor his counsel knew of Smith's prior statement to the

10  police until 1992.  Tennison did not know about or receive the written notes of the Smith

11  interview until the fall of 2001  At some point after his conviction, Tennison learned that a

12  woman named "Chante" claimed to have witnessed the Shannon murder, but he did not know the

13  woman was Chante Smith and had previously given a statement to police.  He informed his

14  counsel of all the information he had about "Chante," but counsel was not able to locate her until

15  after Tennison was sentenced and sent to jail.

16          Fourth, on February 9, 1990, Sanders and San Francisco Police Inspector Nevil Gittens

17  interviewed Luther Blue.  During that interview, the police told Blue that they knew he was

18  present at the murder and that the car chase preceding the murder had started at the 7-Eleven on

19  Bayshore Boulevard, not at Lovers' Lane, as Fauolo and Maluina would testify at trial.  Hendrix

20  testified at deposition that, when interviewing a witness to a crime, he would not question the

21  witness by making statements he knew to be false.  Although the Blue interview was videotaped,

22  the tapes and notes about taped interviews produced to Tennison and his counsel in pretrial

23  discovery do not include the February 9 Blue interview.  Just five days later, on

24  February 14, 1990, the police again interviewed Blue.  The interview was conducted by Sanders

25  and Hendrix.  This time they said nothing about Blue's presence at the murder or the beginning

26  of the car chase; they asked Blue whether he was involved and, when he denied being involved,

27  they ended the interview.  The State then produced to Tennison only the tape of this second

28  interview, rather than the tape and notes from the far more informative first interview.  The State

27

1  likewise omitted any mention of the first Blue interview from the discovery log it produced to

2  Tennison.  As a result, the log was materially misleading and created for the purpose of

3  suppressing key evidence from Tennison.  The log ultimately produced to Tennison – as

4  described in the deposition of Adachi – likewise omitted other important events, including a

5  January 3, 1990 interview of a "witness" who, Tennison discovered from discovery finally

6  turned over in the habeas litigation in 2001, was Chante Smith.  Neither Tennison nor his

7  attorneys knew of the February 9 Blue interview or the notes from it until fall 2001.

8       Fifth, on April 24, 1990, Hendrix and Butterworth participated in the administration of a

9  polygraph test to Pauline Maluina.  At the time, Maluina had recanted her previous testimony

10  that she had been present when Shannon was killed.  She had previously been questioned on

11  April 22 and 23, and on both days had stated that she was not a witness to a murder.  On

12  April 24, her third consecutive day of police questioning, she repeated during the polygraph that

13  she was not a witness to the Shannon murder and previously had testified falsely under oath.

14  Hendrix, Butterworth, and Sanders were aware of the fact and results of the polygraph

15  examination, but did not inform Tennison or his counsel of the examination.  Tennison was

16  unaware of the role of the polygraph in Butterworth's, Hendrix's, and Sanders' three-day

17  campaign to bully Maluina to retract her recantation of her previous testimony.  Tennison and his

18  counsel did not know about, or receive information or materials from, the polygraph or police

19  memorandum describing the polygraph until fall 2001, and did not know about the continued

20  existence of or have access to the polygraph administration materials until March 2005.

21       Sixth, during the three-day bullying campaign, when Masina Fauolo's veracity was being

22  challenged by Maluina and should have been in very serious doubt in the eyes of any reasonable

23  police officer, Hendrix and Sanders interviewed Fauolo and recorded that interview on

24  audiotape.  Defendants never produced the tapes of that interview to Tennison, in fulfillment of

25  their Brady v. Maryland obligations, in the underlying criminal case or in response to Tennison's

26  valid subpoena in his habeas suit.  The tapes initially were not produced in response to

27  Tennison's discovery requests in this suit.  The Defendants did not produced the tapes until

28  May 2005, and then only after Magistrate Judge Chen ordered the tapes produced following a

351965.02

1    lengthy legal battle.  Tennison first learned of the existence of the tapes in discovery in this case.

2    Defendants maintain that the tapes are blank or inaudible refused to allow Tennison to take

3    possession of them in order to perform non-destructive testing until the Court ordered them to.

4    The only reasonable inference is that the tapes contain (or used to contain) information favorable

5    to Tennison's case and have continually been suppressed by defendants in order to conceal that

6    information from Tennison.  If the tapes are indeed blank, the only reasonable inference is that

7    defendants destroyed the content of the tapes in a deliberate, bad-faith effort to conceal evidence

8    favorable to Tennison.

9          Seventh, Hendrix and Sanders engaged in a pattern of manufacturing testimony through

10   their interviews with Fauolo and Maluina.  During Masina Fauolo's first two telephone calls with

11   Hendrix in August 1989, Fauolo knew next to nothing about the homicide.  During Hendrix's

12   first recorded interview with Fauolo (who by that time had been talking to Hendrix and Sanders

13   for six weeks), Fauolo knew more, but still knew nothing about the facts of the homicide.

14   Hendrix and Sanders supplied her with critical details, creating an inaccurate tale about the car

15   chase preceding the murder and the murder itself, which Fauolo would go on to parrot at trial.

16   Fauolo's testimony was materially inconsistent with the known physical evidence and the

17   statements of neighborhood residents who witnessed the car chase.  For these reasons and others,

18   any reasonable police officer would have known that Fauolo was not a witness to any murder.

19   But despite the obvious signs that Fauolo was lying, Hendrix and Sanders assisted her in

20   concocting presentable (yet false) trial testimony.  Similarly, during Hendrix's first recorded

21   interview with Maluina, she knew virtually nothing about the facts of the case.  The details she

22   did profess to know could not be reconciled with Fauolo's false statements, let alone the physical

23   evidence or statements of neighborhood residents.  During that interview, Hendrix supplied

24   Maluina with numerous key facts, including without limitation the location of the car crash, the

25   location of the murder, and the type of gun used to shoot Shannon.  Again, any reasonable police

26   officer would have known that Maluina was not a witness to the Shannon murder.

27          Indeed, after giving perjured testimony at Tennison's 707 hearing, Maluina recanted that

28   testimony and attempted to come clean, telling Hendrix and Butterworth that she had not

351965.02

1  witnessed the Shannon murder.  Despite all these clear indications that the narrations Hendrix

2  and Sanders helped the girls to concoct were patently untrue, Hendrix and Sanders assisted

3  Butterworth in bullying Maluina into withdrawing her recantation – including using Fauolo, the

4  person whom Maluina claimed coerced her false testimony in the first place – to pressure

5  Maluina to withdraw her claim that she lied and was bullied by Fauolo into lying, and then

6  manufacturing Maluina's perjured testimony, which subsequently was offered at trial and played

7  a key role in Tennison's unjust conviction.

8      Finally, Hendrix and Sanders checked out and verified Mr. Tennison's alibi in

9  November 1989, but proceeded to manufacture the case against him anyway.

10 **INTERROGATORY NO. 11**

11      Please identify (i.e., provide name and all known addresses and phone numbers) all

12 persons with knowledge of the facts stated in your response to interrogatory 10.

13 **RESPONSE TO INTERROGATORY NO. 11**

14      Tennison objects to this Interrogatory on the ground that it calls for information protected

15 from disclosure by the attorney-client privilege or any other applicable privileges or protections.

16 Any inadvertent disclosure of such information shall not be deemed a waiver of any such

17 protection or privilege.  Tennison further objects to this Interrogatory on the ground that it calls

18 for information that constitutes attorney work product, was prepared in anticipation of or in

19 connection with litigation, discloses the mental impressions, conclusions, opinions or legal

20 theories of any attorneys for Tennison or for persons having a common interest with Tennison, or

21 is otherwise protected from disclosure under applicable privileges, laws or rules.  Any

22 inadvertent disclosure of such information shall not be deemed a waiver of any such protection

23 or privilege.  Tennison also objects to this Interrogatory on the ground that it calls for Tennison

24 to form a legal conclusion before offering any responses.  Tennison further objects to this

25 Interrogatory to the extent that it seeks information equally available to City.  Tennison also

26 objects to this Interrogatory as premature because the City has not completed production of

27 materials responsive to Tennison's February 1, 2005 Second Set of Requests for Production of

28 Documents and Things, and/or other discovery requests pertinent to this inquiry, such as

30

PLAINTIFF JOHN TENNISON'S RESPONSES TO DEFENDANT CITY AND COUNTY OF SAN
FRANCISCO'S FIRST SET OF INTERROGATORIES
CASE NO. C 04-00574 CW

351965.02

1    Tennison's February 1, 2005 notice of deposition under Fed. R. Civ. P. 30(b)(6).  In fact, the

2    City has intentionally delayed providing discovery for these past four months to deprive from

3    Tennison further evidence of its liability in this case.  The City's demand for discovery under

4    these circumstances in troubling.

5         Discovery regarding municipal liability is ongoing and Tennison reserves the right to

6    complete his investigation and discovery of the facts and his preparation for trial, to supplement

7    this Response, and to adduce evidence at trial that would have been included in this Response

8    had its existence been known to Tennison at this time.

9         Subject to and without waiving the specific and general objections above, Tennison sets

10   forth his information and belief that persons with knowledge of these facts include:

11        Napoleon Hendrix

12        Prentice Earl Sanders

13        Gerald McCarthy

14        Neville Gittens

15        Michael Lewis

16        Leroy Lindo

17        Chante Smith

18        Luther Blue

19        George Butterworth

20        Lovinsky Ricard

21        Pauline Maluina

22        Frank Jordan

23        Masina Fauolo

24   **INTERROGATORY NO. 12**

25        Please identify all documents supporting or otherwise relating to your response to

26   interrogatory 10.

27   **RESPONSE TO INTERROGATORY NO. 12**

28        Tennison objects to this Interrogatory on the ground that it calls for information protected

31

351965.02

1  from disclosure by the attorney-client privilege or any other applicable privileges or protections.

2  Any inadvertent disclosure of such information shall not be deemed a waiver of any such

3  protection or privilege.  Tennison further objects to this Interrogatory on the ground that it calls

4  for information that constitutes attorney work product, was prepared in anticipation of or in

5  connection with litigation, discloses the mental impressions, conclusions, opinions or legal

6  theories of any attorneys for Tennison or for persons having a common interest with Tennison, or

7  is otherwise protected from disclosure under applicable privileges, laws or rules.  Any

8  inadvertent disclosure of such information shall not be deemed a waiver of any such protection

9  or privilege.  Tennison also objects to this Interrogatory on the ground that it calls for Tennison

10  to form a legal conclusion before offering any responses.  Tennison further objects to this

11  Interrogatory to the extent that it seeks information equally available to City.  Tennison also

12  objects to this Interrogatory as premature because the City has not completed production of

13  materials responsive to Tennison's February 1, 2005 Second Set of Requests for Production of

14  Documents and Things, and/or other discovery requests pertinent to this inquiry, such as

15  Tennison's February 1, 2005 notice of deposition under Fed. R. Civ. P. 30(b)(6).  In fact, the

16  City has intentionally delayed providing discovery for these past four months to deprive from

17  Tennison further evidence of its liability in this case.  The City's demand for discovery under

18  these circumstances in troubling.

19  **INTERROGATORY NO. 13**

20      If you contend that any policy, custom, or usage of the City and County of San Francisco

21  caused any injury that you are claiming in this case, please state all facts supporting that

22  contention, including without limitation identification of the precise written or unwritten

23  policies, customs, or usages that you contend caused any injury to you and identification of the

24  precise way(s) in which such policies, customs, or usages caused such injury.

25  **RESPONSE TO INTERROGATORY NO. 13**

26      Tennison objects to this Interrogatory on the ground that it calls for information protected

27  from disclosure by the attorney-client privilege or any other applicable privileges or protections.

28  Any inadvertent disclosure of such information shall not be deemed a waiver of any such

32

351965.02

1    protection or privilege.  Tennison further objects to this Interrogatory on the ground that it calls

2    for information that constitutes attorney work product, was prepared in anticipation of or in

3    connection with litigation, discloses the mental impressions, conclusions, opinions or legal

4    theories of any attorneys for Tennison or for persons having a common interest with Tennison, or

5    is otherwise protected from disclosure under applicable privileges, laws or rules.  Any

6    inadvertent disclosure of such information shall not be deemed a waiver of any such protection

7    or privilege.  Tennison also objects to this Interrogatory on the ground that it calls for Tennison

8    to form a legal conclusion before offering any responses.  Tennison further objects to this

9    Interrogatory to the extent that it seeks information equally available to City.  Tennison also

10   objects to this Interrogatory as premature because the City has not completed production of

11   materials responsive to Tennison's February 1, 2005 Second Set of Requests for Production of

12   Documents and Things, and/or other discovery requests pertinent to this inquiry, such as

13   Tennison's February 1, 2005 notice of deposition under Fed. R. Civ. P. 30(b)(6).  In fact, the

14   City has intentionally delayed providing discovery for these past four months to deprive from

15   Tennison further evidence of its liability in this case.  The City's demand for discovery under

16   these circumstances in troubling.

17   **INTERROGATORY NO. 14**

18        Please identify (i.e., provide name and all known addresses and phone numbers) all

19   persons with knowledge of the facts stated in your response to interrogatory 13.

20   **RESPONSE TO INTERROGATORY NO. 14**

21        Tennison objects to this Interrogatory on the ground that it calls for information protected

22   from disclosure by the attorney-client privilege or any other applicable privileges or protections.

23   Any inadvertent disclosure of such information shall not be deemed a waiver of any such

24   protection or privilege.  Tennison further objects to this Interrogatory on the ground that it calls

25   for information that constitutes attorney work product, was prepared in anticipation of or in

26   connection with litigation, discloses the mental impressions, conclusions, opinions or legal

27   theories of any attorneys for Tennison or for persons having a common interest with Tennison, or

28   is otherwise protected from disclosure under applicable privileges, laws or rules.  Any

33

351965.02

1  inadvertent disclosure of such information shall not be deemed a waiver of any such protection

2  or privilege.  Tennison also objects to this Interrogatory on the ground that it calls for Tennison

3  to form a legal conclusion before offering any responses.  Tennison further objects to this

4  Interrogatory to the extent that it seeks information equally available to City.  Tennison also

5  objects to this Interrogatory as premature because the City has not completed production of

6  materials responsive to Tennison's February 1, 2005 Second Set of Requests for Production of

7  Documents and Things, and/or other discovery requests pertinent to this inquiry, such as

8  Tennison's February 1, 2005 notice of deposition under Fed. R. Civ. P. 30(b)(6).  In fact, the

9  City has intentionally delayed providing discovery for these past four months to deprive from

10  Tennison further evidence of its liability in this case.  The City's demand for discovery under

11  these circumstances in troubling.

12  **INTERROGATORY NO. 15**

13      Please identify all documents supporting or otherwise relating to your response to

14  interrogatory 13.

15  **RESPONSE TO INTERROGATORY NO. 15**

16      Tennison objects to this Interrogatory on the ground that it calls for information protected

17  from disclosure by the attorney-client privilege or any other applicable privileges or protections.

18  Any inadvertent disclosure of such information shall not be deemed a waiver of any such

19  protection or privilege.  Tennison further objects to this Interrogatory on the ground that it calls

20  for information that constitutes attorney work product, was prepared in anticipation of or in

21  connection with litigation, discloses the mental impressions, conclusions, opinions or legal

22  theories of any attorneys for Tennison or for persons having a common interest with Tennison, or

23  is otherwise protected from disclosure under applicable privileges, laws or rules.  Any

24  inadvertent disclosure of such information shall not be deemed a waiver of any such protection

25  or privilege.  Tennison also objects to this Interrogatory on the ground that it calls for Tennison

26  to form a legal conclusion before offering any responses.  Tennison further objects to this

27  Interrogatory to the extent that it seeks information equally available to City.  Tennison also

28  objects to this Interrogatory as premature because the City has not completed production of

34

351965.02

1    materials responsive to Tennison's February 1, 2005 Second Set of Requests for Production of

2    Documents and Things, and/or other discovery requests pertinent to this inquiry, such as

3    Tennison's February 1, 2005 notice of deposition under Fed. R. Civ. P. 30(b)(6). In fact, the

4    City has intentionally delayed providing discovery for these past four months to deprive from

5    Tennison further evidence of its liability in this case. The City's demand for discovery under

6    these circumstances in troubling.

7    **INTERROGATORY NO. 16**

8         If you contend that the City and County of San Francisco negligently selected, trained,

9    retained, supervised, investigated, and/or disciplined any employee of the City and County of

10    San Francisco whom you claim caused some or all of your injuries in this case, please state all

11    facts supporting that contention.

12    **RESPONSE TO INTERROGATORY NO. 16**

13         Tennison objects to this Interrogatory on the ground that it calls for information protected

14    from disclosure by the attorney-client privilege or any other applicable privileges or protections.

15    Any inadvertent disclosure of such information shall not be deemed a waiver of any such

16    protection or privilege. Tennison further objects to this Interrogatory on the ground that it calls

17    for information that constitutes attorney work product, was prepared in anticipation of or in

18    connection with litigation, discloses the mental impressions, conclusions, opinions or legal

19    theories of any attorneys for Tennison or for persons having a common interest with Tennison, or

20    is otherwise protected from disclosure under applicable privileges, laws or rules. Any

21    inadvertent disclosure of such information shall not be deemed a waiver of any such protection

22    or privilege. Tennison also objects to this Interrogatory on the ground that it calls for Tennison

23    to form a legal conclusion before offering any responses. Tennison further objects to this

24    Interrogatory to the extent that it seeks information equally available to City. Tennison further

25    objects that this Interrogatory is compound. Tennison also objects to this Interrogatory as

26    premature because the City has not completed production of materials responsive to Tennison's

27    February 1, 2005 Second Set of Requests for Production of Documents and Things, and/or other

28    discovery requests pertinent to this inquiry, such as Tennison's February 1, 2005 notice of

35

PLAINTIFF JOHN TENNISON'S RESPONSES TO DEFENDANT CITY AND COUNTY OF SAN
FRANCISCO'S FIRST SET OF INTERROGATORIES
CASE NO. C 04-00574 CW

351965.02

1   deposition under Fed. R. Civ. P. 30(b)(6). In fact, the City has intentionally delayed providing

2   discovery for these past four months to deprive from Tennison further evidence of its liability in

3   this case. The City's demand for discovery under these circumstances in troubling.

4   **INTERROGATORY NO. 17**

5       Please identify (i.e., provide name and all known addresses and phone numbers) all

6   persons with knowledge of the facts stated in your response to interrogatory 16.

7   **RESPONSE TO INTERROGATORY NO. 17**

8       Tennison objects to this Interrogatory on the ground that it calls for information protected

9   from disclosure by the attorney-client privilege or any other applicable privileges or protections.

10   Any inadvertent disclosure of such information shall not be deemed a waiver of any such

11   protection or privilege. Tennison further objects to this Interrogatory on the ground that it calls

12   for information that constitutes attorney work product, was prepared in anticipation of or in

13   connection with litigation, discloses the mental impressions, conclusions, opinions or legal

14   theories of any attorneys for Tennison or for persons having a common interest with Tennison, or

15   is otherwise protected from disclosure under applicable privileges, laws or rules. Any

16   inadvertent disclosure of such information shall not be deemed a waiver of any such protection

17   or privilege. Tennison also objects to this Interrogatory on the ground that it calls for Tennison

18   to form a legal conclusion before offering any responses. Tennison further objects to this

19   Interrogatory to the extent that it seeks information equally available to City. Tennison also

20   objects to this Interrogatory as premature because the City has not completed production of

21   materials responsive to Tennison's February 1, 2005 Second Set of Requests for Production of

22   Documents and Things, and/or other discovery requests pertinent to this inquiry, such as

23   Tennison's February 1, 2005 notice of deposition under Fed. R. Civ. P. 30(b)(6). In fact, the

24   City has intentionally delayed providing discovery for these past four months to deprive from

25   Tennison further evidence of its liability in this case. The City's demand for discovery under

26   these circumstances in troubling.

27

28

PLAINTIFF JOHN TENNISON'S RESPONSES TO DEFENDANT CITY AND COUNTY OF SAN
FRANCISCO'S FIRST SET OF INTERROGATORIES
CASE NO. C 04-00574 CW

351965.02

1  **INTERROGATORY NO. 18**

2        Please identify all documents supporting or otherwise relating to your response to

3  interrogatory 16.

4  **RESPONSE TO INTERROGATORY NO. 18**

5        Tennison objects to this Interrogatory on the ground that it calls for information protected

6  from disclosure by the attorney-client privilege or any other applicable privileges or protections.

7  Any inadvertent disclosure of such information shall not be deemed a waiver of any such

8  protection or privilege.  Tennison further objects to this Interrogatory on the ground that it calls

9  for information that constitutes attorney work product, was prepared in anticipation of or in

10  connection with litigation, discloses the mental impressions, conclusions, opinions or legal

11  theories of any attorneys for Tennison or for persons having a common interest with Tennison, or

12  is otherwise protected from disclosure under applicable privileges, laws or rules.  Any

13  inadvertent disclosure of such information shall not be deemed a waiver of any such protection

14  or privilege.  Tennison also objects to this Interrogatory on the ground that it calls for Tennison

15  to form a legal conclusion before offering any responses.  Tennison further objects to this

16  Interrogatory to the extent that it seeks information equally available to City.  Tennison also

17  objects to this Interrogatory as premature because the City has not completed production of

18  materials responsive to Tennison's February 1, 2005 Second Set of Requests for Production of

19  Documents and Things, and/or other discovery requests pertinent to this inquiry, such as

20  Tennison's February 1, 2005 notice of deposition under Fed. R. Civ. P. 30(b)(6).  In fact, the

21  City has intentionally delayed providing discovery for these past four months to deprive from

22  Tennison further evidence of its liability in this case.  The City's demand for discovery under

23  these circumstances in troubling.

24  **INTERROGATORY NO. 19**

25        Please describe in detail how any alleged negligent section, training, retention,

26  supervision investigation, and/or discipline of any employee of the City and County of San

27  Francisco caused some or all of the injuries that you allege that you sustained in this case.

28  **RESPONSE TO INTERROGATORY NO. 19**

PLAINTIFF JOHN TENNISON'S RESPONSES TO DEFENDANT CITY AND COUNTY OF SAN
FRANCISCO'S FIRST SET OF INTERROGATORIES
CASE NO. C 04-00574 CW

351965.02

1    Tennison objects to this Interrogatory on the ground that it calls for information protected

2    from disclosure by the attorney-client privilege or any other applicable privileges or protections.

3    Any inadvertent disclosure of such information shall not be deemed a waiver of any such

4    protection or privilege.  Tennison further objects to this Interrogatory on the ground that it calls

5    for information that constitutes attorney work product, was prepared in anticipation of or in

6    connection with litigation, discloses the mental impressions, conclusions, opinions or legal

7    theories of any attorneys for Tennison or for persons having a common interest with Tennison, or

8    is otherwise protected from disclosure under applicable privileges, laws or rules.  Any

9    inadvertent disclosure of such information shall not be deemed a waiver of any such protection

10    or privilege.  Tennison also objects to this Interrogatory on the ground that it calls for Tennison

11    to form a legal conclusion before offering any responses.  Tennison further objects to this

12    Interrogatory to the extent that it seeks information equally available to City.  Tennison also

13    objects to this Interrogatory as premature because the City has not completed production of

14    materials responsive to Tennison's February 1, 2005 Second Set of Requests for Production of

15    Documents and Things, and/or other discovery requests pertinent to this inquiry, such as

16    Tennison's February 1, 2005 notice of deposition under Fed. R. Civ. P. 30(b)(6).  In fact, the

17    City has intentionally delayed providing discovery for these past four months to deprive from

18    Tennison further evidence of its liability in this case.  The City's demand for discovery under

19    these circumstances in troubling.

20    **INTERROGATORY NO. 20**

21    Please describe in detail any other instance(s) of alleged misconduct by any employee(s)

22    of the City and County of San Francisco that you contend support your claim that the City and

23    County of San Francisco violated your constitutional rights.  (In describing such alleged

24    misconduct, please identify the employee(s) at issue and all other persons who were involved in

25    or who witnessed the alleged misconduct.).

26    **RESPONSE TO INTERROGATORY NO. 20**

27    Tennison objects to this Interrogatory on the grounds that it is overly broad, unduly

28    burdensome, oppressive, and/or unreasonably cumulative and duplicative.  Tennison further

38

1 objects to this Interrogatory in that it seeks information that is neither relevant to this litigation or

2 reasonably calculated to lead to the discovery of admissible evidence. Tennison also objects to

3 this Interrogatory on the ground that it is indecipherably vague in that "other instances" is not

4 defined. Tennison also objects to this Interrogatory as premature because the City has not

5 completed production of materials responsive to Tennison's February 1, 2005 Second Set of

6 Requests for Production of Documents and Things, and/or other discovery requests pertinent to

7 this inquiry, such as Tennison's February 1, 2005 notice of deposition under Fed. R. Civ.

8 P. 30(b)(6). In fact, the City has intentionally delayed providing discovery for these past four

9 months to deprive from Tennison further evidence of its liability in this case. The City's demand

10 for discovery under these circumstances in troubling.

11 **INTERROGATORY NO. 21**

12 　　　　Please identify all documents supporting or otherwise relating to your response to

13 interrogatory 20.

14 **RESPONSE TO INTERROGATORY NO. 21**

15 　　　　Tennison objects to this Interrogatory on the grounds that it is overly broad, unduly

16 burdensome, oppressive, and/or unreasonably cumulative and duplicative. Tennison further

17 objects to this Interrogatory in that it seeks information that is neither relevant to this litigation or

18 reasonably calculated to lead to the discovery of admissible evidence. Tennison also objects to

19 this Interrogatory on the ground that it is indecipherably vague in that "other instances" is not

20 defined. Tennison also objects to this Interrogatory as premature because the City has not

21 completed production of materials responsive to Tennison's February 1, 2005 Second Set of

22 Requests for Production of Documents and Things, and/or other discovery requests pertinent to

23 this inquiry, such as Tennison's February 1, 2005 notice of deposition under Fed. R. Civ.

24 P. 30(b)(6). In fact, the City has intentionally delayed providing discovery for these past four

25 months to deprive from Tennison further evidence of its liability in this case. The City's demand

26 for discovery under these circumstances in troubling.

27

28

351965.02

1    Dated:  May 27, 2005

2                                                    As to objections,

3                                                    KEKER & VAN NEST, LLP

4

5                                        By: _____

6                                             STEVEN P. RAGLAND
                                             Attorneys for Plaintiff
7                                             JOHN TENNISON

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

40

PLAINTIFF JOHN TENNISON'S RESPONSES TO DEFENDANT CITY AND COUNTY OF SAN
FRANCISCO'S FIRST SET OF INTERROGATORIES
CASE NO. C 04-00574 CW

351965.02

1

## PROOF OF SERVICE

2   I declare and state as follows:

3   I am employed in the City and County of San Francisco, State of California in the office of a
4   member of the bar of this court at whose direction the following service was made. I am over the
    age of eighteen years and not a party to the within action. My business address is Keker & Van
5   Nest, LLP, 710 Sansome Street, San Francisco, California 94111. On May 27, 2005, I served
    the following document(s):
6

7   **PLAINTIFF JOHN TENNISON'S RESPONSES TO DEFENDANT CITY AND COUNTY**
    **OF SAN FRANCISCO'S FIRST SET OF INTERROGATORIES**
8

9   X       by **COURIER**, by placing a true and correct copy in a sealed envelope addressed as shown below, and
            dispatching a messenger from Worldwide Attorney Services, Inc., whose address is 75 Lily Street, 3rd
10          Floor, San Francisco, CA 94102, with instructions to hand-carry the above and make delivery to the
            following during normal business hours, by leaving the package with the person whose name is shown or
11          the person authorized to accept courier deliveries on behalf of the addressee.

12
        Evan H. Ackiron                         James A. Quadra, Esq.
13      Scott D. Wiener                         Lisa-Anne M. Wong, Esq.
        Deputy City Attorneys                   Moscone, Emblidge & Quadra, LLP
14      Office of the City Attorney             180 Montgomery Street, Suite 1240
        1390 Market Street, 6th Floor           San Francisco, CA 94104
15      San Francisco, CA 94102-5408            Tel:      (415) 362-3599
        Tel:    (415) 554-3856                  Fax:      (415) 362-7332
16      Fax:    (415) 554-3837

17      Attorneys for Defendants                Attorneys for Defendants
        George Butterworth and                  Prentice Earl Sanders and
18      The City and County of San Francisco    Napoleon Hendrix

19      John Houston Scott, Esq.
20      The Scott Law Firm
        1375 Sutter Street, Suite 222
21      San Francisco, CA 94109
        Tel:    415.561.9600
22      Fax:    415.561.9609

23      Attorneys for Defendant
        Antoine Goff
24

25   Executed on May 27, 2005, at San Francisco, California. I declare under penalty of perjury
     under the laws of the State of California that the above is true and correct.
26
                                                        _Joanne Winars_
27                                                      JOANNE WINARS
28